JEFFREY ALLEN DURBIN, Plaintiff-Appellee, v. JERRY D. GILMORE *et al.*, Defendants-Appellants.

Fourth District   No. 4—99—0095

Opinion filed September 21, 1999.

338

James E. Ryan, Attorney General, of Chicago (Joel O. Bertocchi, Solicitor General, and Marcia L. McCormick, Assistant Attorney General, of counsel), for appellants.

Jeffrey Allen Durbin, of Menard, appellee *pro se*.

JUSTICE McCULLOUGH delivered the opinion of the court:

Defendants Jerry D. Gilmore, chief administrative officer at Pontiac Correctional Center, and adjustment committee members Tamela Quinley and Jacqueline McCoy appeal from the order of the circuit court of Livingston County issuing a writ of *mandamus* on behalf of plaintiff Jeffrey Allen Durbin. Although plaintiff is *pro se* in this appeal, the public defender was appointed and represented plaintiff in the trial court. In this action, plaintiff, a person committed to the Department of Corrections (DOC), claimed to have been denied his rights to due process because defendants violated DOC rules in a disciplinary proceeding against him by failing to (1) have him interviewed by a reviewing officer; (2) ensure that a hearing officer properly investigated the major disciplinary report; (3) provide an impartial adjustment committee to conduct the disciplinary hearing; (4) inform plaintiff prior to the disciplinary hearing of exculpatory evidence; and (5) provide an adequate summary of factual findings in support of the adjustment committee's decision. Plaintiff requested the trial court (1) revoke and expunge all disciplinary actions taken as a result of the January 7, 1998, disciplinary report; (2) rectify

constitutional violations and nonperformance of ministerial duties; (3) accord him a hearing before an impartial adjustment committee; and (4) issue a writ requiring defendant to comply within 5 to 30 days after receiving notice. After defendants filed a motion to dismiss pursuant to section 2—619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2—619(a)(9) (West 1998)), arguments of counsel were considered and the trial court found (1) a duty imposed on defendant to interview the committed person; (2) that obligation was mandatory rather than directory; and (3) the failure to interview was not justified. As a result, the disciplinary action against plaintiff resulting from the January 7, 1998, disciplinary report was vacated, and defendants were directed to expunge this disciplinary action from plaintiff's master file. The issues on appeal are whether (1) the trial court misinterpreted the applicable DOC rules, (2) the remedy granted was not connected to the rule relied on, and (3) the failure to provide an interview did not violate plaintiff's right to due process. We reverse and remand.

■ The issuance of a writ of *mandamus* is an extraordinary remedy, discretionary in nature, and it is appropriate only when there is a clear right to the requested relief, a clear duty of the defendants to act, and clear authority in the defendants to comply with the writ. *People v. Latona*, 184 Ill. 2d 260, 277, 703 N.E.2d 901, 909-10 (1998). The standard of review for issuance of a writ of *mandamus* is whether the trial court's findings of fact are against the manifest weight of the evidence (see *Taylor v. Wentz*, 15 Ill. 2d 83, 89-91, 153 N.E.2d 812, 816-17 (1958)) or the issuance of the writ amounted to an abuse of discretion (see *Baldacchino v. Thompson*, 289 Ill. App. 3d 104, 113, 682 N.E.2d 182, 188 (1997)). Reversal is justified in the event of a clear abuse of discretion or when an impermissible legal criterion has been applied. The reviewing court looks to the criteria on which the trial court should rely in determining if the trial court abused its discretion. *Boatmen's National Bank v. Martin*, 155 Ill. 2d 305, 314, 614 N.E.2d 1194, 1198-99 (1993).

■ On the record before us, it is difficult to comprehend how the case got to the point where judgment was entered for plaintiff. The only pleadings filed were the petition and the motion to dismiss. Even though *mandamus* is an extraordinary remedy, *mandamus* proceedings are governed by the same pleading rules that apply to other actions at law. *Noyola v. Board of Education*, 179 Ill. 2d 121, 133, 688 N.E.2d 81, 86 (1997). Defendants' filing an answer is contemplated by the Code (735 ILCS 5/14—103 (West 1996)). In this case, defendants were not defaulted, and judgment was entered. The record does not show defendants' motion to dismiss being denied, nor did plaintiff file

a motion for judgment on the pleadings (735 ILCS 5/2—615(e) (West 1996)). The record does suggest, however, that defendants acquiesced in the procedure in the trial court. Defendants have not raised an issue on appeal concerning the propriety of the procedures in the trial court, and it is waived. 177 Ill. 2d R. 341(e)(7).

The record in this case also does not contain the investigation report, the disciplinary report, or the adjustment committee summary. Attached to defendants' motion to dismiss were the affidavits of Steven Ruiz, Quinley, and McCoy.

Ruiz, a correctional captain in the internal investigations division at Western Illinois Correctional Center (WICC), wrote the investigative report against plaintiff on January 6, 1998. The investigative report placed plaintiff on investigative status for an alleged plot to assault a lieutenant at WICC. On January 7, 1998, Ruiz wrote a disciplinary report charging plaintiff with ''#205 (gang activity), #601 (aiding, abetting, attempt, solicitation or conspiracy) and #102 (assault).'' According to Ruiz' affidavit, when the disciplinary report was written, plaintiff was released from investigative status and no longer had a right to be interviewed pursuant to section 504.50(c) of the DOC rules (20 Ill. Adm. Code § 504.50(c) (1999)).

Quinley, a correctional lieutenant at Pontiac Correctional Center (PCC), chaired the adjustment committee that heard the disciplinary report against plaintiff on January 15, 1998. McCoy, a correctional casework supervisor at PCC, sat on the adjustment committee that heard the disciplinary report against plaintiff. According to their affidavits, as a result of the hearing, plaintiff was found guilty of the charges, had one year of good time revoked, was demoted to C Grade for one year, and received one year in segregation. Quinley and McCoy stated they were not biased against plaintiff and did not (1) initiate the allegation that was the basis of the disciplinary report, (2) investigate the allegation, (3) witness the incident or have prior knowledge of it, (4) possess any exculpatory evidence not disclosed to plaintiff, (5) falsify the summary of evidence, or (6) conspire to manufacture false evidence against plaintiff.

Apparently, the trial court found Ruiz' affidavit to amount to a judicial admission that plaintiff was not interviewed after the investigative report was written, and implicit in its order was the finding that the plaintiff was not afforded such an interview. On appeal, defendants do not challenge the propriety of that finding.

■ If a committed person is suspected of committing an offense, an investigative report may be issued that reasonably informs the committed person of the subject of the investigation to the extent safety and security allows. 20 Ill. Adm. Code § 504.30(d) (1999). The shift

supervisor determines whether to place a committed person in investigative status or temporary confinement pending a determination of whether to issue a disciplinary or investigative report based on factors including, but not limited to, the aggressiveness of the committed person, the threat posed to the safety and security of the facility or any person, the need to restrict the committed person's access to the general population to protect the individual or to conduct the investigation, or the seriousness of the offense. 20 Ill. Adm. Code § 504.40 (1999). A committed person may be detained in investigative status for up to 30 days (20 Ill. Adm. Code § 504.50(c)(3) (1999)) unless the period of investigative status is extended (20 Ill. Adm. Code §§ 504.50(c)(7), (c)(8) (1999). The chief administrative officer of each facility designates one or more reviewing officers. 20 Ill. Adm. Code § 504.50(a) (1999). Section 504.50(c) of DOC's rules states:

> "A committed person who receives an investigative report shall be interviewed by the Reviewing Officer in order to permit the committed person an opportunity to present his or her views regarding placement in investigative status. The interview shall be conducted within 14 days after initial placement in investigative status, whenever possible." 20 Ill. Adm. Code §504.50(c) (1999).

The reviewing officer reviews disciplinary reports to determine whether (1) the reported facts justify a disciplinary hearing or the report should be expunged, (2) the report was properly completed, and (3) the offense is major or minor in nature. 20 Ill. Adm. Code § 504.50(d) (1999). Disciplinary reports involving major disciplinary offenses, as in this case, are forwarded to a hearing investigator. 20 Ill. Adm. Code § 504.50(e) (1999). The hearing officer conducts an investigation (20 Ill. Adm. Code § 504.60 (1999)) and "may interview any person who may have information which relates to the alleged violation" (20 Ill. Adm. Code § 504.60(d) (1999)).

The key question in this case concerns the construction of the DOC regulation embodied in Title 20, section 504.50(c). The trial court construed that section as requiring the reviewing officer to interview plaintiff after an investigative report was issued even though a disciplinary report was issued against plaintiff the next day. It is defendants' interpretation that, once the disciplinary report was issued, the obligation to interview the inmate under Title 20, section 504.50(c), was removed.

■ An administrative agency's interpretation of its own rules and regulations is entitled to respectful consideration. However, the agency's interpretation is not binding on the courts, which independently analyze the meaning of the rule as a question of law. *Brown v. Chicago Park District*, 296 Ill. App. 3d 867, 874-75, 695 N.E.2d 1315, 1320 (1998).

" 'Courts apply the same rules of construction used in construing statutes when interpreting the meaning of an agency rule.' *Board of Trustees*, 274 Ill. App. 3d at 153. 'Each provision must be construed in connection with every other provision to produce a harmonious whole.' *White v. Department of Employment Security*, 264 Ill. App. 3d 851, 854 (1994). In determining the intent of the drafters in adopting a regulation, a court may consider the language used, the reason and necessity for the regulation, the evil sought to be remedied and the purpose to be achieved. *John Sexton Contractors Co. v. Pollution Control Board*, 201 Ill. App. 3d 415, 424 (1990), citing *Stewart v. Industrial Comm'n*, 115 Ill. 2d 337, 341 (1987). The language of an administrative regulation is to be given its ordinary meaning. *Linderman v. Illinois Civil Service Comm'n*, 188 Ill. App. 3d 554, 557 (1989)." *Brown*, 296 Ill. App. 3d at 875, 695 N.E.2d at 1320.

■ In the context of the DOC rules, we interpret Title 20, section 504.50(c), to require the reviewing officer to interview an inmate after an investigative report is issued and while it remains pending. To interpret the rule as did the trial court would require such an interview even if the investigative report is expunged and no further action is contemplated against the inmate. That would be an absurd result. It is also clear from the rules that a disciplinary report may issue without an investigative report having first been issued when an employee observes, rather than suspects, the committed person committing an offense, discovers evidence of its commission, or receives information from a reliable witness of such conduct. 20 Ill. Adm. Code § 504.30(b) (1999). Had a disciplinary report been initially filed in this case against plaintiff instead of an investigative report, section 504.50(c) would not have required that a reviewing officer interview plaintiff. It is clear from the rules that a disciplinary report is the basis for actions by the adjustment committee, and if the reviewing officer determines that an adjustment committee hearing is appropriate, then a disciplinary report is issued. The adjustment committee takes no action on an investigative report. An investigative report may be expunged or expire without further action. The interview and investigation by the reviewing officer are necessary to prevent an inmate from arbitrarily being placed in investigative status. Once a disciplinary report issues, the inmate will have an opportunity to present his defense to the adjustment committee (see 20 Ill. Adm. Code § 504.80 (1999)). The need for an interview by the reviewing officer as required by section 504.50(c) is eliminated once the disciplinary report is issued.

Moreover, nothing in the rules suggests that the purpose of the interview by the reviewing officer is to gather information and identify

witnesses with regard to the case against the inmate or for his defense. Per section 504.50(c), the interview is "to permit the committed person an opportunity to present his or her views regarding placement in investigative status." 20 Ill. Adm. Code § 504.50(c) (1999). Even assuming plaintiff had a right to an interview by a reviewing officer after the investigative report issued, that does not implicate or violate any right of plaintiff in the process resulting in the disciplinary action. Defendant's rights to due process (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2) were not violated. Due process requires only that the inmate receive (1) advance written notice of the disciplinary charges at least 24 hours prior to hearing; (2) when consistent with institutional safety and correctional goals, an opportunity to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 564-66, 41 L. Ed. 2d 935, 956, 94 S. Ct. 2963, 2979 (1974). The remedy awarded in this case amounted to an abuse of discretion. As previously noted, the issuance of a writ of *mandamus* is appropriate only given a clear right to the requested relief. Plaintiff has not established the clear entitlement to vacatur of the disciplinary action and expungement of the record simply because he was not interviewed by a reviewing officer after an investigative report was issued.

For the foregoing reasons, the judgment of the circuit court of Livingston County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

KNECHT, P.J., and GARMAN, J., concur.