LOSARDO LUCAS, Plaintiff-Appellant, v. ANNE R. TAYLOR *et al.*, Defendants-Appellees.

Fourth District    No. 4—03—0746

Opinion filed June 16, 2004.

Losardo Lucas, of Tamms, appellant *pro se*.

Lisa Madigan, Attorney General, of Chicago (Gary S. Feinerman, Solicitor General, and Nadine J. Wichern, Assistant Attorney General, of counsel), for appellees.

JUSTICE TURNER delivered the opinion of the court:

In April 2002, plaintiff, Losardo Lucas, a prisoner in the Illinois Department of Corrections (DOC), filed a *pro se* petition for *mandamus* against defendants, Anne R. Taylor and the Prisoner Review Board (PRB), alleging (1) he did not receive procedural due process before the PRB and (2) his good-conduct credits were revoked before they were "earned." In July 2002, defendants filed a motion to dismiss, which the trial court granted.

On appeal, plaintiff argues the trial court erred in dismissing his petition. We affirm.

## I. BACKGROUND

Plaintiff was sentenced to 42 years in prison in 1985 for murder, weapon possession, and assault, and he is currently an inmate at the Tamms Correctional Center. In April 2002, plaintiff filed a *pro se* petition for *mandamus*, naming the PRB and its chairman, Taylor, as

defendants. Plaintiff alleged the PRB revoked good-conduct credits without giving him 24-hour notice of a hearing, a hearing where he could call witnesses or present evidence, or a written statement relied on by the PRB in making its decision. Also, plaintiff claimed the PRB revoked good-conduct credits he "had not yet earned." For example, plaintiff alleged by the time he had served 5 years in prison, the PRB had improperly revoked 8 years and 11 months' worth of credits. In his prayer for relief, plaintiff asked the trial court to compel defendants to provide due process at future hearings and to restore 12 years and 3 months of his revoked good-conduct credits.

In May 2002, defendants filed a motion for a bill of particulars, requesting plaintiff specify which inmate disciplinary reports were the basis for the revocation of his 12 years and 3 months of good-conduct credits. In his June 2002 response, plaintiff claimed the PRB never informed him when it approved the DOC Director's decision to revoke his good-conduct credit. Plaintiff did attach numerous disciplinary reports to his response, along with DOC documents indicating the amount of good-conduct credits that had been revoked over several years. The documents revealed instances where the adjustment committee recommended revocation of plaintiff's good-conduct credits and the DOC Director and the PRB approved the recommendation. In several instances, the DOC Director reduced the amount recommended by the adjustment committee and the PRB approved the reduction. On multiple occasions, plaintiff refused to appear before the PRB or refused to speak to the panel.

In July 2002, defendants filed a motion to dismiss pursuant to sections 2—615 and 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—615, 2—619(a)(9) (West 2002)), alleging plaintiff failed to show a clear, legal right to a due-process hearing before the PRB and defendants had no ministerial duty to restore plaintiff's good-conduct credits. Defendants also claimed plaintiff was not required to receive his good-conduct credit on a daily basis instead of upon his arrival to prison.

In December 2002, the trial court granted defendants' motion to dismiss. The court found defendants had no involvement in the awarding of statutory good time and were not a part of DOC. The court also held that although a prisoner is entitled to a due-process hearing before the prison adjustment committee pursuant to *Wolff v. McDonnell*, 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974), the *Wolff* requirements did not apply to the PRB. The court found the PRB "reviews the recommendations of [DOC] and the [p]laintiff is not entitled to two due[-]process hearings as he has argued in his complaint."

In January 2003, plaintiff filed a motion to reconsider, claiming the PRB is required to conduct a due-process hearing pursuant to *Wolff* as only the PRB can revoke good-conduct credits. Defendants filed a response, claiming the PRB is a reviewing body and is not required to conduct a formal hearing when revoking good time. In August 2003, the trial court denied plaintiff's motion. This appeal followed.

## II. ANALYSIS

Plaintiff argues the trial court erred in dismissing his *mandamus* complaint. We disagree.

### A. Petition for *Mandamus*

"*Mandamus* is an extraordinary remedy to enforce, as a matter of right, 'the performance of official duties by a public officer where no exercise of discretion on his part is involved.' " *Lewis E. v. Spagnolo*, 186 Ill. 2d 198, 229, 710 N.E.2d 798, 813 (1999), quoting *Madden v. Cronson*, 114 Ill. 2d 504, 514, 501 N.E.2d 1267, 1272 (1986). A court will award a writ of *mandamus* "only if a plaintiff establishes a clear, affirmative right to relief, a clear duty of the public official to act, and a clear authority in the public official to comply with the writ." *People ex rel. Ryan v. Roe*, 201 Ill. 2d 552, 555, 778 N.E.2d 701, 703 (2002). A plaintiff must set forth every material fact necessary to show he or she is entitled to a writ of *mandamus*, and the plaintiff bears the burden to establish a clear, legal right to it. *Chicago Ass'n of Commerce & Industry v. Regional Transportation Authority*, 86 Ill. 2d 179, 185, 427 N.E.2d 153, 156 (1981).

A decision to grant or deny *mandamus* will not be reversed on appeal unless it is against the manifest weight of the evidence. *Howell v. Snyder*, 326 Ill. App. 3d 450, 453, 760 N.E.2d 1009, 1011 (2001). On appeal, this court reviews "*de novo*, however, the granting of a motion to dismiss a petition for *mandamus*." *Howell*, 326 Ill. App. 3d at 453, 760 N.E.2d at 1011.

When ruling on a motion to dismiss under either section 2—615 or section 2—619 of the Code of Civil Procedure, "the trial court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party." *Chicago Motor Club v. Robinson*, 316 Ill. App. 3d 1163, 1171, 739 N.E.2d 889, 894-95 (2000), citing *Toombs v. City of Champaign*, 245 Ill. App. 3d 580, 583, 615 N.E.2d 50, 51 (1993). The trial court should grant the motion to dismiss only if the plaintiff can prove no set of facts to support the cause of action. *Hatch v. Szymanski*, 325 Ill. App. 3d 736, 739, 759 N.E.2d 585, 588 (2001).

## B. Due Process and the PRB

■ Plaintiff argues he stated a claim for *mandamus* because the PRB failed to comply with due process. Plaintiff claims the PRB is the body that hears and decides whether to revoke an inmate's good-conduct credits when more than 30 days are at issue. Thus, he argues the PRB must provide the minimum procedural safeguards provided for by the United States Supreme Court in *Wolff*. In analyzing the due-process requirements in inmate disciplinary proceedings, this court in *Durbin v. Gilmore*, 307 Ill. App. 3d 337, 343, 718 N.E.2d 292, 297 (1999), stated:

> "Due process requires only that the inmate receive (1) advance written notice of the disciplinary charges at least 24 hours prior to hearing; (2) when consistent with institutional safety and correctional goals, an opportunity to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. [*Wolff*, 418 U.S. at 564-66, 41 L. Ed. 2d at 956, 94 S. Ct. at 2979]."

Defendants, however, maintain plaintiff failed to state a *mandamus* claim because he did not show he had a clear, legal right to receive procedural due process from the PRB. Instead, defendants argue Illinois statutes and regulations provide that if an inmate's good-conduct credits are revoked, then the inmate is entitled to due process before the prison adjustment committee not the PRB.

To determine the process due before an inmate's good-conduct credits can be revoked, we must look at the relevant statutes and regulations. Statutory construction is a matter of law, and appellate review is *de novo. People v. Shanklin*, 329 Ill. App. 3d 1144, 1145, 769 N.E.2d 547, 548 (2002). The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. *People v. Latona*, 184 Ill. 2d 260, 269, 703 N.E.2d 901, 906 (1998). The words of a statute are to be given their plain and commonly understood meanings. *Krohe v. City of Bloomington*, 329 Ill. App. 3d 1133, 1135-36, 769 N.E.2d 551, 553 (2002). When the language of a statute is clear and unambiguous, it will be given effect without resort to the other tools of statutory construction. *Segers v. Industrial Comm'n*, 191 Ill. 2d 421, 431, 732 N.E.2d 488, 494 (2000).

■ Initially, we set forth a summary of the entire inmate disciplinary process and the steps required before an inmate's good-conduct credits can be revoked.

> "[I]f a correctional officer wishes to charge an inmate with a violation of DOC regulations, the officer prepares a disciplinary report describing the incident in question. An adjustment committee

consisting of three members then reviews that report. The committee acts as a fact-finding body and also provides recommendations on how much good time an inmate should lose. The warden of the correctional center involved then reviews the adjustment committee's recommendation and forwards it to the Director of DOC for final approval. The Director can approve on his own the revocation of an inmate's good time of one month or less in a given calendar year. Any greater loss of good time must be submitted to the [PRB] for its review and final determination." *In re M.S.*, 239 Ill. App. 3d 938, 941, 606 N.E.2d 768, 770 (1992).

■ Illinois inmates have a statutory right to receive good-conduct credits, and thus they have a liberty interest entitling them to procedural safeguards under the due-process clause of the fourteenth amendment. *Hamilton v. O'Leary*, 976 F.2d 341, 344 (7th Cir. 1992), citing *Wolff*, 418 U.S. at 557, 41 L. Ed. 2d at 951, 94 S. Ct. at 2975. Section 3—6—3(a)(1) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/3—6—3(a)(1) (West 2002)) provides "[DOC] shall prescribe rules and regulations for the early release on account of good conduct of persons committed to [DOC] which shall be subject to review by the [PRB]." DOC sets forth the rules and regulations for revoking good-conduct credits, and "no inmate may be penalized more than one year of good[-]conduct credit for any one infraction." 730 ILCS 5/3—6—3(c) (West 2002).

The DOC Director must also establish disciplinary procedures consistent with due process, including the establishment of disciplinary boards to hear and determine charges, notice of the violation to the inmate, hearings allowing the inmate to testify or call witnesses, and a written statement of the fact finder's decision. 730 ILCS 5/3—8—7(e)(1) through (e)(5) (West 2002). To that end, the DOC Director created adjustment committees to hear inmate disciplinary reports. 20 Ill. Adm. Code §§ 504.20(a), 504.70, 504.80 (Conway Greene CD-ROM January 2002). If an inmate is charged with a disciplinary violation, the adjustment committee must hold a hearing within 14 days and afford the inmate procedural due process. 20 Ill. Adm. Code § 504.80(a) (Conway Greene CD-ROM January 2002). Following the hearing, the adjustment committee may (1) find the inmate not guilty, (2) find further investigation is necessary, (3) continue the matter for a reasonable time to obtain additional information, or (4) find the inmate guilty. 20 Ill. Adm. Code § 504.80(k) (Conway Greene CD-ROM January 2002). If the adjustment committee finds the inmate guilty, it may recommend, *inter alia*, revocation of the inmate's good-conduct credits. 20 Ill. Adm. Code § 504.80(k)(4)(F) (Conway Greene CD-ROM January 2002).

The adjustment committee's summary is then forwarded to the chief administrative officer for review and approval. 20 Ill. Adm. Code § 504.80(o) (Conway Greene CD-ROM January 2002). If the adjustment committee's disposition recommends revocation of good-conduct credits, the DOC Director must also review the disposition. 20 Ill. Adm. Code § 504.80(p) (Conway Greene CD-ROM January 2002). On review, the chief administrative officer and the DOC Director may (1) confirm the recommendation, (2) order additional or new proceedings, (3) suspend or overturn the recommendation, or (4) offer the offending inmate a work assignment to reduce the sanction. 20 Ill. Adm. Code § 504.80(p)(1) (Conway Greene CD-ROM January 2002). The chief administrative officer and DOC Director may not increase the recommended sanctions, but they may reduce them. 20 Ill. Adm. Code § 504.80(p)(2) (Conway Greene CD-ROM January 2002).

If the DOC Director affirms the adjustment committee's recommendation and the proposed sanction is the revocation of less than 30 days of good-conduct credit, the DOC Director has the discretion to immediately revoke the credits. 730 ILCS 5/3—6—3(c) (West 2002). However, if the DOC seeks to revoke good-conduct credits in excess of 30 days, the PRB must review the request. 730 ILCS 5/3—6—3(c) (West 2002); 20 Ill. Adm. Code § 107.150(c) (Conway Greene CD-ROM January 2002); see also *Lane v. Sklodowski*, 97 Ill. 2d 311, 317, 454 N.E.2d 322, 325 (1983) ("revocation by the Director of more than 30 days of credits in any one year requires review by the [PRB]").

The PRB was created in 1977 as a body independent of DOC. 730 ILCS 5/3—3—1(a)(1) (West 2002). Among its duties, the PRB acts as "the board of review for cases involving the revocation of good[-]conduct credits." 730 ILCS 5/3—3—1(a)(2) (West 2002).

"When [DOC] seeks to revoke, suspend[,] or reduce the rate of accumulation of any good[-]conduct credits for an alleged infraction of its rules, it shall bring charges therefor against the prisoner sought to be so deprived of good[-]conduct credits before the [PRB] ***." 730 ILCS 5/3—6—3(c) (West 2002).

Further, section 3—3—2(a)(4) of the Unified Code states the PRB shall:

"hear by at least [one] member and through a panel of at least [three] members, decide cases brought by [DOC] against a prisoner in the custody of [DOC] for alleged violation of [DOC] rules with respect to good[-]conduct credits pursuant to [s]ection 3—6—3 of this [Unified] Code ***. *** However, the [PRB] shall not be empowered *** to increase any penalty beyond the length requested by [DOC][.]" 730 ILCS 5/3—3—2(a)(4) (West 2002).

The Illinois Administrative Code also provides the PRB will "conduct

hearings," "give inmates face-to-face hearings," and may "call witnesses." 20 Ill. Adm. Code § 1610.170(c) (Conway Greene CD-ROM January 2002).

In the case *sub judice*, plaintiff claims these latter statutes and regulations require the PRB to hear and decide cases through face-to-face hearings, thereby requiring the hearings to comply with procedural due process. Defendants, however, contend the overall legislative scheme entitles an inmate to due process at the adjustment-committee level and not before the PRB.

A review of Illinois law establishes a multistep process before an inmate's good-conduct credits can be revoked in certain circumstances. In section 3—8—7(e)(1) of the Unified Code, the General Assembly granted DOC authority in disciplinary cases involving "the loss of good[-]time credit" to "establish one or more disciplinary boards to hear and determine charges." 730 ILCS 5/3—8—7(e)(1) (West 2002). When an inmate is so charged, he or she is entitled to notice of the hearing, an opportunity to appear, the ability to summon witnesses to testify, and receive a written statement of the decision. 730 ILCS 5/3—8—7(e)(2) through (e)(5) (West 2002). Within the DOC, the adjustment committee has been established to hear and decide disciplinary charges and revoke an inmate's good-conduct credits. 20 Ill. Adm. Code § 504.80(k)(4)(F) (Conway Greene CD-ROM January 2002). At the adjustment-committee level, the inmate must be provided with (1) due process, including written notice of the facts and charges (20 Ill. Adm. Code § 504.80(b) (Conway Greene CD-ROM January 2002)), procedures for inmates to make statements, produce documents, or request witnesses be interviewed (20 Ill. Adm. Code § 504.80(f) (Conway Greene CD-ROM January 2002)) and (2) a written record summarizing the adjustment committee's conclusions and the supporting reasons (20 Ill. Adm. Code § 504.80(l) (Conway Greene CD-ROM January 2002)).

Based on the overall framework of the applicable statutes and regulations, the adjustment committee is the body designated to hear and decide inmate disciplinary reports and provide inmates with due process if good-conduct credits are revoked. The due process afforded at the adjustment-committee level complies with the requirements set forth in *Wolff*. On the other hand, the PRB's role is not one of a fact finder but as the "board of review for cases involving the revocation of good[-]conduct credits." 730 ILCS 5/3—3—1(a)(2) (West 2002).

Although this court is not bound to follow federal district court decisions (see *People v. Reatherford*, 345 Ill. App. 3d 327, 340, 802 N.E.2d 340, 352 (2003)), such decisions can provide guidance and act as persuasive authority (*People v. Criss*, 307 Ill. App. 3d 888, 900, 719

N.E.2d 776, 786 (1999)). In *United States ex rel. Duane v. Illinois Prisoner Review Board*, No. 89—C—7946 (N.D. Ill. July 3, 1990) (1990 WL 103608), the petitioner filed a writ of *habeas corpus*, arguing the PRB denied him due process by failing to provide him with the minimum standards set forth in *Wolff*. *Duane*, slip op. at ___ (1990 WL 103608, at *2). The petitioner argued "since [PRB] review *is* required before good conduct credits can be revoked, and since [PRB] review does not satisfy minimal due process," his right to due process was violated. *Duane*, slip op. at ___ (1990 WL 103608, at *2). In an unpublished memorandum opinion and order, the district court disagreed, stating the PRB was not required to satisfy procedural due-process guidelines similar to those set forth in *Wolff*. *Duane*, slip op. at ___ (1990 WL 103608, at *2). Instead, the court found the petitioner received due process at the DOC hearing, and because the PRB review could only lessen the recommended DOC penalty, "this review cannot by itself deprive petitioner of his liberty interest." *Duane*, slip op. at ___ (1990 WL 103608, at *2). The court concluded, "If anything, [PRB] review is merely an extra layer of procedural protection affixed to the constitutionally sufficient [DOC] hearing." *Duane*, slip op. at ___ (1990 WL 103608, at *2).

The Supreme Court in *Wolff*, 418 U.S. at 557, 41 L. Ed. 2d at 951, 94 S. Ct. at 2975, found the State's statutory creation of good-conduct credits amounted to a liberty interest entitling the inmates to procedural due process. To that end, "some kind of hearing is required at some time before a person is finally deprived" of his constitutionally protected liberty interest. *Wolff*, 418 U.S. at 557-58, 41 L. Ed. 2d at 952, 94 S. Ct. at 2975. The district court in *Duane* noted the PRB's review cannot deprive an inmate of his liberty interest. Section 3—6—3(c) of the Unified Code confirms that restriction by stating the PRB shall not be empowered "to increase any penalty beyond the length requested by [DOC]." 730 ILCS 5/3—6—3(c) (West 2002). Thus, the PRB is not the fact-finding body in charge of revoking good-conduct credits but instead has been set up as the "board of review for cases involving the revocation of good[-]conduct credits." 730 ILCS 5/3—3—1(a)(2) (West 2002); see also *Lane*, 97 Ill. 2d at 317, 454 N.E.2d at 325 (revocation of more than 30-days' good-conduct credits by DOC requires review by PRB); *Taylor v. Franzen*, 93 Ill. App. 3d 1152, 1153, 420 N.E.2d 1203, 1203-04 (1981) ("Among other functions, the [PRB] is the board of review for cases involving the revocation of good[-]conduct credits"). As the PRB cannot deprive an inmate of his liberty interest but can only concur with or deny DOC's recommendation or reduce the sanction, an inmate is not entitled to the due-process protections he was afforded at the adjustment-committee level.

■ Plaintiff is entitled to due-process safeguards before the adjustment committee can revoke his good-conduct credits, but the PRB merely provides an "extra layer of procedural protection" to the DOC hearing because it cannot increase the penalty beyond DOC's recommendation. As plaintiff does not allege the adjustment committee failed to provide him the process he was due, his claim of *mandamus* fails to establish a fourteenth amendment violation on this ground.

## C. Revocation of Good-Conduct Credits

■ Plaintiff argues the PRB had no power to revoke good-conduct credits he had not "earned." For example, plaintiff contends the PRB had revoked 8 years and 11 months of good-conduct credits by 1991 after he had only served 5 years in prison. Plaintiff argues he could have only earned five years' worth of credits at that time (one day of credit for every day served) and only that amount could be revoked by the PRB.

In his *mandamus* petition, plaintiff sought an order compelling defendants to restore 12 years and 3 months of good-conduct credits that had been revoked. However, plaintiff did not allege DOC had recommended the restoration of good-conduct credits. The PRB can only restore good-conduct credit previously revoked upon DOC's recommendation. 730 ILCS 5/3—3—2(b) (West 2002). Unless DOC has recommended plaintiff have good time restored, or without statutory authorization to the contrary, defendants cannot unilaterally restore the credit or be compelled to do so. Further, the Unified Code provides the PRB has the discretion to restore good-conduct credits. 730 ILCS 5/3—3—2(b) (West 2002) (PRB may restore revoked credits upon DOC's recommendation). "An order of *mandamus* will not lie to direct the manner of performance of an action which requires the exercise of discretion." *Howell*, 326 Ill. App. 3d at 452, 760 N.E.2d at 1010. Without a statutory or ministerial duty to act, plaintiff failed to set forth the material facts necessary to show a clear, legal right to *mandamus* relief.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's dismissal of plaintiff's *mandamus* petition.

Affirmed.

KNECHT, P.J., and APPLETON, J., concur.