NO. 4-05-0678     Filed: 9/28/06

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| TERRY C. JOHNSON, | ) | Appeal from |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| THE ILLINOIS DEPARTMENT OF | ) | No. 04MR256 |
| CORRECTIONS; ROGER E. WALKER, JR., | ) | |
| Director; and THE ILLINOIS PRISONER | ) | Honorable |
| REVIEW BOARD, | ) | Leo J. Zappa, Jr., |
| Defendants-Appellees. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE TURNER delivered the opinion of the court:

In July 2004, plaintiff, Terry C. Johnson, filed a pro se complaint against defendants, the Illinois Department of Corrections (DOC), Roger E. Walker, Jr., and the Illinois Prisoner Review Board (PRB), seeking the restoration of good-conduct credits, an award of meritorious good-conduct credits, and his immediate release from custody. In August 2004, defendants moved to dismiss the complaint, which the trial court granted.

On appeal, plaintiff argues the trial court erred in dismissing his complaint. We affirm.

I. BACKGROUND

Plaintiff was sentenced to 25 years in prison in 1993, and the record shows he is currently an inmate at Tamms Correctional Center. In July 2004, plaintiff filed a pro se complaint alleging constitutional and statutory violations and containing multiple counts for breach of contract, civil rights, declaratory judgment, habeas corpus, and mandamus. Plaintiff alleged DOC officials were retroactively applying a policy of

awarding good-conduct credits at the beginning of a prisoner's term of imprisonment and then revoking them when appropriate. Plaintiff claimed the policy violated his constitutional and statutory rights by taking good-conduct credits away from him before those credits had been earned.

Plaintiff alleged DOC changed its policy in 1999 from awarding good-conduct credits on a monthly basis to awarding all day-for-day good-conduct credits at the beginning of a prisoner's sentence. Plaintiff claimed the policy violated his civil rights and amounted to an ex post facto violation. He also alleged the change in policy violated the Administrative Procedure Act (5 ILCS 100/1-1 et seq. (West 2004)) and his due-process rights because he was not given notice or the opportunity to be heard on the revocation of the credits. Further, the PRB conducted ex parte hearings and failed to provide him with the factual information relied upon in its decisions reviewing his disciplinary proceedings.

Plaintiff also asserted a breach-of-contract claim. He alleged that in May 2000 he entered into a contractual agreement with prison officials, who promised him 90 days of meritorious good time and the restoration of his lost good-conduct credits for his information concerning the presence of hacksaw blades in the prison. Plaintiff alleged DOC failed to honor the contractual agreement and had not restored his good-conduct credits or credited him for 90 days of meritorious good time.

Plaintiff attached various exhibits to his complaint. He included a form showing his minimum projected outdate as being September 9, 2004, and his maximum release date as March 9, 2017. Between February 1995 and September 2002, plaintiff's projected outdate increased from 2004 to 2012. Plaintiff attached numerous

forms, wherein DOC requested revocation of good-conduct credits based on disciplinary infractions. He also included inmate disciplinary reports and adjustment-committee reports concerning prison offenses committed between 1998 and 1999. An adjustment-committee summary listed multiple offenses, including, inter alia, 58 infractions for disobeying a direct order, 69 incidences of insolence, 28 violations for intimidation or threats, and 16 assaults.

The complaint included a December 2003 grievance plaintiff filed that alleged DOC had an unconstitutional policy of awarding him all of his good-conduct credits on the first day of imprisonment and then revoking credits that he "had not yet earned." The grievance officer found the grievance was not timely filed. Plaintiff had good-conduct credit revoked in September 2001 and did not file his grievance within 60 days as required by section 504.810 of Title 20 of the Illinois Administrative Code. See 20 Ill. Adm. Code §504.810 (Conway Greene CD-ROM June 2003). The administrative review board denied plaintiff's appeal based on the untimeliness of his grievance.

In August 2004, defendants filed a motion to dismiss plaintiff's complaint pursuant to section 2-615 of the Code of Civil Procedure (Procedure Code) (735 ILCS 5/2-615 (West 2004)), claiming the practice of awarding and then revoking good-conduct credit not yet earned did not violate plaintiff's rights and he was not entitled to the due-process protections with respect to hearings before the PRB. Further, defendants claimed the trial court had no jurisdiction to hear plaintiff's breach-of-contract claim as it is a matter for the Court of Claims. Defendants also stated plaintiff received all the process due him before the adjustment committee.

In May 2005, the trial court granted defendants' motion to dismiss. This

appeal followed.

## II. ANALYSIS

### A. Standard of Review

The trial court dismissed plaintiff's complaint pursuant to section 2-615 of the Procedure Code. When ruling on a motion to dismiss under section 2-615, "the trial court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party." Chicago Motor Club v. Robinson, 316 Ill. App. 3d 1163, 1171, 739 N.E.2d 889, 894-95 (2000). "The trial court should grant the motion to dismiss only if the plaintiff can prove no set of facts to support the cause of action." Lucas v. Taylor, 349 Ill. App. 3d 995, 998, 812 N.E.2d 72, 75 (2004). A dismissal under section 2-615 is reviewed de novo. Beahringer v. Page, 204 Ill. 2d 363, 369, 789 N.E.2d 1216, 1221 (2003).

### B. Exhaustion

In his complaint, plaintiff sought the reversal of all discipline he received for various inmate disciplinary reports between 1998 and 2001 with claims for mandamus, breach of contract, and civil-rights violations. Plaintiff also requested the receipt of 90 days of meritorious good-conduct credit based on the alleged contractual agreement with prison officials concerning the hacksaw blades and an escape attempt. Another claim centered on the alleged ex parte hearings conducted by the PRB along with its refusal to provide him with the factual information relied on in making its decision. Defendants argue plaintiff has failed to exhaust his administrative remedies as to these claims because he did not file grievances regarding these issues.

"The doctrine of exhaustion of administrative remedies holds that a party aggrieved by an administrative decision cannot seek judicial review without first pursuing all available administrative remedies." Canel v. Topinka, 212 Ill. 2d 311, 320, 818 N.E.2d 311, 319 (2004). This requirement allows the administrative agency the opportunity to consider the facts of the case before it, use its expertise, and allow the aggrieved party to obtain relief without the need for judicial review. Canel, 212 Ill. 2d at 320-21, 818 N.E.2d at 319. The doctrine also applies to grievances filed by inmates, including those grievances alleging a constitutional violation. Beahringer, 204 Ill. 2d at 376, 789 N.E.2d at 1225. We note an appellee may raise any point to support the judgment even though not raised in the trial court, "so long as the factual basis for such point was before the trial court." Beahringer, 204 Ill. 2d at 370, 789 N.E.2d at 1222.

In the case sub judice, the record indicates plaintiff did not file any grievances with respect to the disciplinary infractions he complained of in his complaint. Likewise, plaintiff has not shown he filed a grievance pertaining to the promised meritorious good-conduct credit in exchange for his cooperation in the prison investigation. Further, plaintiff failed to exhaust his administrative remedies with respect to the alleged violations committed by the PRB in conducting its hearings and rendering its decisions. Thus, plaintiff failed to state a clear right to relief because his failure to exhaust his administrative remedies defeated his claims. See Caruth v. Quinley, 333 Ill. App. 3d 94, 99, 775 N.E.2d 224, 228 (2002) (inmate failed to state a clear right to mandamus relief because he failed to exhaust his administrative remedies). Without a showing of exhaustion of remedies, plaintiff cannot establish a clear affirmative right to mandamus, contractual, or civil-rights relief on these issues.

C. <u>Habeas</u> <u>Corpus</u>

Although plaintiff is barred from arguing the aforementioned claims based on exhaustion, he did allege in his complaint to the trial court that he was entitled to his immediate release because defendants lacked authority to award him good-conduct credits he had not yet earned. Defendants contend plaintiff's <u>habeas</u>-<u>corpus</u> claim was properly dismissed because he is not entitled to discharge when the maximum term of imprisonment has not expired. However, if plaintiff's claim that his good-conduct credits were unlawfully applied is meritorious, he would be entitled to immediate release from prison. See <u>Adcock v. Snyder</u>, 345 Ill. App. 3d 1095, 1099, 804 N.E.2d 141, 143-44 (2004) (inmate stated claim for <u>habeas</u> <u>corpus</u> when he alleged his good-conduct credits were unlawfully revoked and thus he would be entitled to immediate release from prison). As plaintiff claims he should have been released on June 9, 2004, his <u>habeas</u>-<u>corpus</u> claim must be addressed.

The gravamen of plaintiff's complaint is that defendants have no authority to revoke good-conduct credits not yet earned. Plaintiff argues he is entitled to earn one day of credit for each day of good conduct and those credits must be awarded on a monthly basis. Defendants contend DOC has the authority to tentatively award good-conduct credit and later deduct credits that are lost due to disciplinary infractions. We agree with defendants.

Under section 3-6-3(a)(2.1) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/3-6-3(a)(2.1) (West 2004)), "a prisoner who is serving a term of imprisonment shall receive one day of good[-]conduct credit for each day of his or her sentence of imprisonment or recommitment under [s]ection 3-3-9. Each day of good[-

]conduct credit shall reduce by one day the prisoner's period of imprisonment or recommitment under [s]ection 3-3-9."

"'Day-for-day' credit is a phrase used to describe the system of mandatory 'good[-] conduct credit' contained in section 3-6-3 of the Unified Code of Corrections. [Citations.] *** The term 'day-for-day' does not appear in the express language of section 3-6-3. [Citation.] However, the term 'day-for-day' is used to describe the current credit system. [Citations.] Under the day-for-day system, a felon may earn credit for good behavior once he or she begins to serve the prison sentence." People v. Lindsey, 199 Ill. 2d 460, 477-78, 771 N.E.2d 399, 412 (2002).

The statute does not indicate how or when good-conduct credits should be awarded. Since the statute only specifies how much credit is to be awarded under the good-conduct-credit system, it does not prevent DOC from aggregating the credits and awarding the full amount in advance subject to reductions based on rules infractions.

Since DOC has the right to revoke good-conduct credits for disciplinary infractions, an inmate's right to receive the credits is contingent upon his good behavior while in prison. See People v. Lindsey, 319 Ill. App. 3d 586, 593, 746 N.E.2d 308, 314 (2001) (purpose of credit provisions is to "provide felonious inmates with incentive to conform their behavior to prison rules"). An inmate's contingent right to receive the credits has been set by statute, and DOC has chosen to tentatively award the credits at the outset of an inmate's sentence and take them away upon conviction for disciplinary

violations.  The calculation process does not impact the substantive rights of an inmate but merely serves as an internal accounting policy.

As defendants point out, the process of awarding credits at the beginning of an inmate's sentence has several advantages.  The initial calculation will allow inmates to know up front what their proposed outdate will be if they have no disciplinary infractions.  Inmates with no such infractions will not need further calculations.  Similarly, inmates with few infractions will require minimal calculations.  Plaintiff's exhibit A is a worksheet showing a simple calculation with the projected outdate increasing with every recorded loss in months or days of good-conduct credit.  Having to recalculate every inmate's outdate on a monthly basis as good-conduct credits accumulated would result in a waste of time and resources and cause unnecessary paperwork.  DOC's method allows inmates to easily keep track of outdates to ensure mistakes are not made by the records office in making these calculations.  It also highlights the reality that if an inmate seeks to leave prison at the earliest possible outdate, it would be in his best interest not to commit disciplinary infractions and incur loss of good-conduct credits.

As further evidence of DOC's right to administer the good-conduct provisions, the Unified Code also gives DOC the flexibility to determine how and when to award the credits.  DOC is authorized to "prescribe rules and regulations for revoking good[-]conduct credit, or suspending or reducing the rate of accumulation of good[-]conduct credit for specific rule violations, during imprisonment."  730 ILCS 5/3-6-3(c) (West 2004).  Under the plain meaning of the statute, DOC has the authority to affect credits prior to the time they accumulate as it can "suspend" or "reduce" the

accumulation of such credits because of disciplinary infractions. When DOC suspends the accumulation of credits, thereby preventing the prisoner from accumulating or earning the credits, he loses the credits because of his bad behavior despite the fact he has not earned the credits.

DOC's decision to award all of the good-conduct credits at the beginning of an inmate's sentence is simply an internal accounting decision that neither deprives plaintiff of any rights guaranteed by the constitution nor violates any state statutes or regulations. Without more, plaintiff has not shown some act or omission that entitles him to immediate release from custody. See 735 ILCS 5/10-124 (West 2004). Thus, his claim based on habeas corpus fails.

Plaintiff also argues in his brief that our decision in Lucas was wrongly decided. We note the plaintiff in that case also argued the PRB had no power to revoke good-conduct credits he had not earned. Lucas, 349 Ill. App. 3d at 1004, 812 N.E.2d at 79. We found the plaintiff failed to show a clear legal right to mandamus relief. Lucas, 349 Ill. App. 3d at 1004, 812 N.E.2d at 79-80. Moreover, we found an inmate is not entitled to the due-process safeguards before the PRB that he receives before the adjustment committee. Lucas, 349 Ill. App. 3d at 1004, 812 N.E.2d at 79. Lucas remains good law and has not been overruled, and plaintiff offers nothing of substance that would require us to revisit that ruling. We decline to overturn that decision and find plaintiff has not shown a violation of his due-process rights that would be cognizable under a claim for habeas-corpus relief. Therefore, the trial court's decision to dismiss plaintiff's complaint was not erroneous.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

McCULLOUGH and MYERSCOUGH, JJ., concur.