# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 08-4307

LOSARDO LUCAS,

*Petitioner-Appellant,*

*v.*

JESSE MONTGOMERY,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 05-765—**David R. Herndon**, *Chief Judge.*

ARGUED SEPTEMBER 9, 2009—DECIDED OCTOBER 22, 2009

Before FLAUM, EVANS, and WILLIAMS, *Circuit Judges.*

FLAUM, *Circuit Judge.* In 1985, Losardo Lucas was con-
victed of murder, weapon possession, and assault in
an Illinois state court. He was sentenced to forty-two
years in prison. While serving his term, Lucas had over
twelve years of good-conduct credit revoked. In March
2005 Lucas filed a petition for a writ of habeas corpus
in the Northern District of Illinois. Lucas's petition
asserts that the manner in which the Illinois Department

of Corrections revoked his good-conduct credit violated his constitutional due process rights. The district court denied Lucas's petition but granted a Certificate of Appealability. For the reasons set forth below, we affirm the district court's denial of the habeas petition.

## I. Background

In Illinois, the revocation of good-conduct credit is handled by the prison adjustment committee of the Illinois Department of Corrections (IDOC) and the Prison Review Board (PRB). When a prisoner allegedly commits an offense punishable by revocation of good-conduct credit, the prison adjustment committee convenes a hearing. *See* Ill. Admin. Code tit. 20, § 504.80. No less than twenty-four hours prior to the hearing, the offender must receive written notice of the facts and charges against him. *Id.* At the hearing, the offender may appear before and address the committee, make statements and produce documents in his defense, and call witnesses. *Id.* At the conclusion of the hearing, if the committee finds that good-conduct credit should be revoked, the committee gives a written statement of reasons for their finding. *Id.* When the amount of good-conduct credit to be revoked exceeds thirty days, the PRB must approve the prison adjustment committee's finding and recommendation to revoke. *See id.* §§ 107.150(c) & 1610.170(a). Upon review, the PRB may: (1) concur with the adjustment committee's recommendation; (2) refuse to follow the recommendation to revoke the credits; or (3) reduce the penalty recommended. *Id.* The PRB may

not increase the amount of good-conduct credit to be revoked. *See id.*

While serving his sentence, Lucas had twenty-five hearings to revoke good-conduct credit. These hearings resulted in the revocation of a total of twelve years of good-conduct credit. In 2002, Lucas filed a state court complaint for mandamus against the PRB. Lucas alleged that when the PRB affirmed the revocation of his good-conduct credit it had not afforded him procedural due process as required by *Wolff v. McDonnell*, 418 U.S. 539 (1974). The Illinois trial court dismissed Lucas's complaint and the Illinois appellate court affirmed. *Lucas v. Taylor*, 812 N.E.2d 72 (Ill. Ct. App. 2004). The Illinois appellate court held that while an Illinois prisoner is entitled to *Wolff* procedures before the prison adjustment committee, he is not so entitled during the PRB's review process. *Id.* Lucas does not dispute that the prison adjustment committee afforded him proper *Wolff* procedures at all of his hearings.

After the Illinois appellate court dismissed Lucas's complaint, Lucas filed a petition for habeas corpus raising the same issue as he did in his complaint for mandamus against the PRB. The district court denied the petition, reasoning that Lucas received all of the due process protections required by *Wolff* before the prison adjustment committee. On March 1, 2009, after serving twenty-four years in prison, Lucas was released. He is currently on mandatory supervised release. The parties agree that if his good-conduct credits had not been revoked, Lucas would be free of his mandatory supervised release at this time.

## II. Discussion

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), in reviewing a state court's decision on a federal constitutional issue, this court may grant habeas relief only if the state's adjudication of the issue: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). The relevant state court decision is that of the last state court to review the issue. *Gonzales v. Mize*, 565 F.3d 373, 379 (7th Cir. 2009). Because no facts are in dispute, the issue before this court is whether the decision of the Illinois Court of Appeals "was contrary to, or involved an unreasonable interpretation of, clearly established federal law, as determined by the Supreme Court of the United States." *See* 28 U.S.C. § 2254(d). For the purposes of habeas corpus review, "[c]learly established federal law" means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Whether a state ruling runs afoul of these AEDPA standards is a legal determination, and, as such, we review the district court's determination de novo. *See Sweeney v. Carter*, 361 F.3d 327, 330 (7th Cir. 2004) (citing *Schaff v. Snyder*, 190 F.3d 513, 522 (7th Cir. 1999)).

As discussed above, Lucas acknowledges the prison adjustment committee afforded him his due process

rights as set out in *Wolff*. Lucas argues that his due process rights were violated because he was not afforded such rights before the PRB, which, according to him, is the tribunal that actually has the authority to render a final decision. In *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974), the Supreme Court held that due process in a prison disciplinary proceeding requires: (1) advanced written notice of the disciplinary charge; (2) the opportunity to call witnesses and present documentary evidence; and (3) a written statement by the fact-finders of their decision that includes the evidence relied upon and the basis for their decision. In applying *Wolff* to this case, the Illinois appellate court found that the state had not run afoul of *Wolff* because, based on the statutory scheme, "the prison adjustment committee is the body designated to hear and decide inmate disciplinary reports and provide inmates with due process if good-conduct credits are revoked." *See Lucas*, 812 N.E.2d at 78. As for the PRB, the Illinois appellate court found that, "[its] role is not one of a fact finder but as the 'board of review for cases involving the revocation of good-conduct credits.'" *Id.* (citing 730 ILCS 5/3-3-1(a)(2)). As the Illinois court interpreted the relevant Illinois statutes, "PRB review is merely an extra layer of procedural protection affixed to the constitutionally sufficient [prison adjustment committee] hearing." *Id.* (citing *United States ex rel. Duane v. Illinois Prisoner Review Board*, No. 89-C-7946, 1990 WL 103608 (N.D. Ill. July 3, 1990)). Additionally, the state court concluded that because "the PRB cannot deprive an inmate of his liberty interest but can only concur with or deny the prison adjustment committee's

recommendation or reduce the sanctions, an inmate is not entitled to the due process protections he was afforded at the [prison] adjustment-committee level." *Id.*

The Illinois appellate court's conclusion regarding the status of the PRB under Illinois law is not a federal question and is therefore not a cognizable claim for federal habeas relief. See *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."). However, the state court's conclusion that the PRB cannot deprive an inmate of a liberty interest, and therefore proceedings before the PRB are not covered by *Wolff*, is a question of federal law. Accordingly, we may review that decision.

In *Wolff*, the Supreme Court explained that, where the state creates a right to good-conduct credit, a prisoner's interest in maintaining good-conduct credit "has real substance and is sufficiently embraced within the Fourteenth Amendment's 'liberty' to entitle him to those minimum procedures . . . to insure that the state-created right is not arbitrarily abrogated." *Wolff*, 418 U.S. at 557. Because the PRB can only reduce or ratify the recommended amount of revoked credit and is without power to extend the amount of time that an inmate may be incarcerated, the PRB cannot deprive an inmate of the liberty interest recognized by the Court in *Wolff*. Moreover, the protections specified in *Wolff*—written notice of the charge so that the inmate can "marshal facts in his defense," the opportunity for the inmate to be heard, the opportunity for the inmate to call witnesses and

present evidence, and a written statement from the finder of fact identifying the evidence relied on in coming to its determination—are procedures designed to safeguard the adversarial process before a fact-finding body. Since the PRB does not find facts, but rather only approves, reduces or abrogates penalties based on the prison adjustment committee's findings, *Wolff* is not implicated.

Additionally, appellees ask this court to reconsider its decision in *Cox v. McBride*, 279 F.3d 492 (7th Cir. 2002), and to find that Lucas's petition was untimely. Because a reconsideration of *Cox* is not necessary to the determination of this case, we do not reach the merits of that argument.

### III. Conclusion

For the above stated reasons, we AFFIRM the district court's denial of the petition for a writ of habeas corpus.