# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Uphoff v. Grosskopf*, 2013 IL App (4th) 130422

---

| | |
|---|---|
| Appellate Court Caption | SETH P. UPHOFF, State's Attorney of Livingston County, Plaintiff and Counterdefendant-Appellant, v. MATTHEW E. GROSSKOPF, Defendant and Counterplaintiff-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-13-0422 |
| Filed | December 12, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | An order granting defendant's request under the Freedom of Information Act for the production of documents relating to a 2001 murder trial prosecuted by the office of plaintiff State's Attorney was reversed on the ground that State's Attorney's office is a "public body" for purposes of the Act and is exempt from complying with the Act. |
| Decision Under Review | Appeal from the Circuit Court of Livingston County, No. 11-MR-41; the Hon. Stephen R. Pacey, Judge, presiding. |
| Judgment | Reversed. |

Counsel on Appeal

Seth Uphoff (argued), State's Attorney, of Pontiac (Randy A. Yedinak, Assistant State's Attorney, of counsel), for appellant.

Donald M. Craven and Esther J. Seitz (argued), both of Donald M. Craven, P.C., of Springfield, for appellee.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Jane Elinor Notz, Assistant Attorney General, of counsel), *amicus curiae*.

Panel

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justice Turner specially concurred, with opinion.
Presiding Justice Appleton dissented, with opinion.

## OPINION

¶ 1 Plaintiff, Seth P. Uphoff, the Livingston County State's Attorney, appeals from the trial court's order granting summary judgment in favor of defendant, Matthew Grosskopf. The court ordered Uphoff to produce documents to Grosskopf pursuant to his request under the Freedom of Information Act (hereinafter FOIA) (5 ILCS 140/1 to 11.5 (West 2010)). For the reasons that follow, we reverse.

¶ 2 I. BACKGROUND

¶ 3 In February 2010, Grosskopf sent Thomas Brown, who was then the Livingston County State's Attorney, a FOIA request for documents relating to a 2001 murder trial conducted in Livingston County. Brown denied the request, and Grosskopf appealed to the Attorney General's Public Access Counselor, who issued a letter finding that Brown was required to disclose the documents requested by Grosskopf, subject to permissible redactions.

¶ 4 In April 2011, Brown filed a complaint for declaratory relief, seeking a court determination as to whether the State's Attorney's office was a "public body" within the meaning of section 2 of FOIA (5 ILCS 140/2(a) (West 2010)). Brown named Grosskopf and Lisa Madigan, in her capacity as Illinois Attorney General, as defendants. Grosskopf answered the complaint and filed a counterclaim to compel Brown's compliance with the Public Access Counselor's advisory opinion. Madigan filed a motion to dismiss, arguing that Brown was unable to state a cause of action for declaratory relief because no actual controversy existed. Specifically, Madigan asserted that the Public Access Counselor's letter was a nonbinding and nonreviewable opinion, meaning it could not form the basis of an

actual legal controversy. The trial court later granted Madigan's motion to dismiss.

¶ 5 Brown appealed, and this court affirmed. *Brown v. Grosskopf*, 2013 IL App (4th) 120402, ¶ 15, 984 N.E.2d 1167.

¶ 6 Following this court's decision, the trial court amended the caption to reflect the named plaintiff and counterdefendant, Seth P. Uphoff, who is the current Livingston County State's Attorney. Grosskopf filed a motion for summary judgment on his surviving counterclaim. After a May 2013 hearing, the court ruled in Grosskopf's favor and granted summary judgment. The court concluded that FOIA applied to State's Attorneys and ordered the requested documents be released to Grosskopf.

¶ 7 This appeal followed.

¶ 8 II. ANALYSIS

¶ 9 Uphoff argues that the trial court erred by concluding that a State's Attorney's office is a "public body" within the meaning of FOIA. Uphoff asserts that the office instead is a part of the judicial branch of state government and, therefore, exempt from complying with FOIA. Because we conclude that a State's Attorney's office is a "judicial body," we agree with Uphoff that it is exempt under FOIA.

¶ 10 A. The Standard of Review

¶ 11 When reviewing an order granting summary judgment, this court determines whether the case presents any genuine issues of material fact. If not, then we decide whether the moving party is entitled to judgment as a matter of law. We review *de novo* the trial court's grant of summary judgment. *Metropolitan Life Insurance Co. v. Hamer*, 2013 IL 114234, ¶ 17, 990 N.E.2d 1144.

¶ 12 B. Statutory Interpretation

¶ 13 In *Relf v. Shatayeva*, 2013 IL 114925, ¶¶ 23, 39, the Illinois Supreme Court recently discussed the principles governing statutory interpretation and wrote the following:

"The primary goal in construing a statute is to ascertain and give effect to the legislature's intent. The best indication of that intent is the language of the statute. [Citation.] In construing that language, words and phrases should not be considered in isolation. Rather, the language in each section of the statute must be examined in light of the statute as a whole, which is construed in conjunction with other statutes touching on the same or related subjects."

And:

"When construing statutes, it is appropriate to consider similar and related enactments, though not strictly *in pari materia*. We must presume that several statutes relating to the same subject are governed by one spirit and a single policy, and that the legislature intended the several statutes to be consistent and harmonious."

¶ 14 In *Prazen v. Shoop*, 2013 IL 115035, ¶ 21, the supreme court further discussed statutory

interpretation as follows:

> "[I]n determining the legislative intent of a statute, a court may consider not only the language used, but also the reason and necessity for the law, the evils sought to be remedied, and the purposes to be achieved. [Citation.] Words and phrases should be construed in light of other relevant provisions of the statute and must not be interpreted in isolation. [Citation.] Each word, clause and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous."

¶ 15                               C. The Judicial Exemption Under FOIA

¶ 16    "[T]he purpose of FOIA ' "is to open governmental records to the light of public scrutiny." ' " *City of Champaign v. Madigan*, 2013 IL App (4th) 120662, ¶ 29, 992 N.E.2d 629 (quoting *Stern v. Wheaton-Warrenville Community Unit School District 200*, 233 Ill. 2d 396, 405, 910 N.E.2d 85, 91 (2009), quoting *Bowie v. Evanston Community Consolidated School District No. 65*, 128 Ill. 2d 373, 378, 538 N.E.2d 557, 559 (1989)). However, exemptions and exclusions exist. Generally, FOIA provides that "[e]ach public body shall make available to any person for inspection or copying all public records." 5 ILCS 140/3(a) (West 2010).

¶ 17    The parties agree that FOIA does not apply to the judicial branch of state government. See *Copley Press, Inc. v. Administrative Office of the Courts*, 271 Ill. App. 3d 548, 553, 648 N.E.2d 324, 327-28 (1995) ("The lack of any reference to the courts or judiciary must be taken as an intent to exclude the judiciary from the disclosure requirements of [FOIA]."). Thus, the pivotal question in this case is whether the State's Attorney's office is a "public body" within the meaning of FOIA or, as Uphoff asserts, "a judicial body" of state government.

¶ 18          D. The Second District's Decision in *Nelson v. County of Kendall*

¶ 19    The Second District recently addressed the same question presented here: Is the State's Attorney's office a "public body" subject to FOIA? See *Nelson v. County of Kendall*, 2013 IL App (2d) 120635, ¶ 8, 990 N.E.2d 1237. In *Nelson*, the Second District determined that a State's Attorney's office was not a "public body" but was instead a judicial body that was established in the judicial article of the Illinois Constitution (Ill. Const. 1970, art. VI, § 19). Accordingly, the *Nelson* court held that a State's Attorney's office was exempt from the requirement to produce documents or other materials pursuant to a FOIA request. *Nelson*, 2013 IL App (2d) 120635, ¶¶ 17, 24, 990 N.E.2d 1237. *Nelson* is currently pending before the Illinois Supreme Court. See Nelson v. County of Kendall, No. 116303 (Ill. S. Ct.).

¶ 20    We agree with *Nelson*'s ultimate conclusion but our analysis differs somewhat from that of the Second District.

¶ 21                               E. The Creation of SAAP

¶ 22    A key component of our analysis of legislative intent in this case is Public Act 96-900, which became effective on May 28, 2010. Public Act 96-900 amended the State's Attorneys

-4-

Appellate Prosecutor's Act (SAAP Act) (725 ILCS 210/1 to 11 (West 2012)), which created the office of the State's Attorneys Appellate Prosecutor (SAAP).

¶ 23　　The General Assembly created SAAP 36 years ago to handle criminal cases on appeal for prosecutors outside Cook County. As described by the Second District in *Nelson*, SAAP is "the statutorily created appellate arm of the office of State's Attorney." *Nelson*, 2013 IL App (2d) 120635, ¶ 19, 990 N.E.2d 1237. The SAAP Act further provides that SAAP may assist State's Attorneys in the prosecution of cases at the trial level or serve as special prosecutor if so appointed by a court. 725 ILCS 210/4.01 (West 2012).

¶ 24　　Since the SAAP Act was passed 36 years ago, it was amended three times before 2010. Each of those amendments dealt with minor issues of SAAP governance and contained no changes of substance. See Pub. Act 80-1331 (eff. Aug. 7, 1978); Pub. Act 83-747 (eff. Jan. 1, 1984); Pub. Act 84-1062 (eff. July 1, 1986).

¶ 25　　Significantly, the first sentence of section 3 of the SAAP Act provides as follows: "There is created the Office of the State's Attorneys Appellate Prosecutor as an agency of state government." 725 ILCS 210/3 (West 2008). That sentence appeared in the original SAAP Act as enacted in 1977 and remained unchanged until 2010.

¶ 26　　　　　　　　　　F. The FOIA Litigation

¶ 27　　As earlier noted, in February 2010, Grosskopf sent the then-Livingston County State's Attorney a FOIA request for documents relating to a 2001 murder trial conducted in Livingston County. That request began the litigation that is now before this court.

¶ 28　　Also in 2010, the plaintiff in *Nelson* filed an action in the circuit court of Kendall County (Kendall County No. 10-MR-143) pursuant to a FOIA request, seeking injunctions requiring Kendall County and the Kendall County State's Attorney to turn over emails that the plaintiff contended were generated by the Kendall County State's Attorney's office. *Nelson*, 2013 IL App (2d) 120635, ¶ 1, 990 N.E.2d 1237. That litigation ultimately led to the Second District's decision in *Nelson*.

¶ 29　　　　　　G. The Language and Timing of Public Act 96-900

¶ 30　　Senate Bill 3372 of the 96th General Assembly, which ultimately became Public Act 96-900, was introduced in February 2010. That bill amended three sections of the SAAP Act and repealed two others. See Pub. Act 96-900 (eff. May 28, 2010). Most of the provisions of that bill dealt with relatively minor revisions in the governance of SAAP, but the bill contained one important change. That change appears in the first sentence of section 3 of the SAAP Act, which was amended to provide as follows: "There is created the Office of the State's Attorneys Appellate Prosecutor as *a judicial* agency of state government." (Emphasis added.) Pub. Act 96-900 (eff. May 28, 2010). We note again that prior to the enactment of Public Act 96-900, that sentence simply referred to the creation of SAAP "as an agency of state government." 725 ILCS 210/3 (West 2008).

¶ 31                    H. The Purpose and Meaning of Designating SAAP
                          "As a Judicial Agency of State Government"

¶ 32      Given the timing of the FOIA requests made to the State's Attorney in the present case
and to the State's Attorney in *Nelson*, and given further the timing of the enactment of Public
Act 96-900, we are convinced that (1) the amendment to the first sentence of section 3 of the
SAAP Act in 2010 was in response to the litigation in this case and in *Nelson* and (2) the
purpose of Public Act 96-900, deeming SAAP to be "a judicial agency of state government,"
was to provide a FOIA exemption for that agency.

¶ 33      At oral argument, this court presented Grosskopf's counsel with this proposed
interpretation of the reason for the legislature's designating SAAP to be "a judicial agency
of state government" and asked, if that interpretation was not correct, what interpretation she
could provide for the legislature's enactment of Public Act 96-900. She could provide none,
and neither can we.


¶ 34                    I. The Prosecutorial Role of SAAP and State's Attorneys

¶ 35      Further supporting our conclusion that the purpose of Public Act 96-900 was to exempt
SAAP from FOIA requests is that SAAP is, in fact, in no sense a judicial agency of state
government. That is, SAAP performs no functions that are remotely similar to those
performed by judges. Instead, SAAP is purely a prosecutorial agency and has been
throughout its 36-year existence.

¶ 36      In discussing the prosecutorial role of State's Attorneys, this court has written the
following:

          "The State's Attorney is a constitutional officer. (Ill. Const. 1970, art. VI, § 19.) His
          office is part of the executive branch of State government and the powers exercised by
          that office are executive powers. (*People v. Stinger*[, 22 Ill. App. 3d 371, 373, 317
          N.E.2d 340, 342 (1974)]).*" People v. Thompson*, 88 Ill. App. 3d 375, 377, 410 N.E.2d
          600, 601 (1980).

          Before this court made the above observation in *Thompson*, the Illinois Supreme Court relied
          on the principle that the State's Attorney's office is part of the executive branch. See, *inter
          alia*, *People ex rel. Daley v. Suria*, 112 Ill. 2d 26, 37, 490 N.E.2d 1288, 1292 (1986); *People
          ex rel. Daley v. Moran*, 94 Ill. 2d 41, 45, 445 N.E.2d 270, 272 (1983) ("It is a familiar and
          firmly established principle that the State's Attorney [is] a member of the executive branch
          ***."); *People v. Rhodes*, 38 Ill. 2d 389, 396, 231 N.E.2d 400, 403 (1967); *People ex rel.
          Elliott v. Covelli*, 415 Ill. 79, 88-89, 112 N.E.2d 156, 160-61 (1953).

¶ 37      We agree with Grosskopf that although the State's Attorney's office was created within
the judicial article of the Illinois Constitution of 1970, the State's Attorney's office is not part
of the judicial branch of government. The judicial branch exercises judicial power, which is
the power to adjudicate cases. We agree with the following description of "judicial power"
taken from Black's Law Dictionary 864 (8th ed. 2004):

          "The authority vested in courts and judges to hear and decide cases and to make binding
          judgments on them; the power to construe and apply the law when controversies arise

over what has been done or not done under it."

We again note that neither SAAP nor State's Attorneys exercise such judicial power.

¶ 38 However, none of the above discussion about the role or duties of the State's Attorneys (or SAAP) matters to the resolution of this case. That is because, as the *Nelson* court explained:

"[T]he focal point of our inquiry is not the history and tradition of State's Attorneys' powers and functions. Nor is our focus on determining the branch of government to which State's Attorneys belong. Rather, our narrow objective is to determine only whether the legislature intended to include State's Attorneys within the Act's definition of 'public body.' Again, given that (1) the Act's definition of 'public body' does not include judicial bodies, (2) the legislature's use of the term 'judicial' in another context [(referring here to section 3 of the SAAP Act (725 ILCS 210/3 (West 2012)))] reveals that the term is broad enough to include an entity created under the constitution's judicial article, and (3) the office of State's Attorney is established in the constitution's judicial article, we decline to infer a legislative intent to include State's Attorneys within the Act's definition of 'public body' absent a clear expression to that effect." *Nelson*, 2013 IL App (2d) 120635, ¶ 21, 990 N.E.2d 1237.

¶ 39 We note that Public Act 96-900, in addition to deeming SAAP to be a "judicial agency of state government," added no new powers or duties to SAAP that in any way could be viewed as judicial in nature. Thus, despite the fact that SAAP performs no judicial functions, the legislature–in 2010–while the litigation in this case and in *Nelson* was being either proposed or pursued, changed the designation of SAAP from "an agency of state government" to "a judicial agency of state government."

¶ 40 The General Assembly's declaration that SAAP is "a judicial agency of state government" reminds us of a story involving Abraham Lincoln, who, when questioned about an issue concerning the use of language, asked his questioner how many legs a dog would have if they called the dog's tail a leg. The questioner confidently responded "five," but Lincoln was not persuaded. He is reputed to have responded, "Calling a dog's tail a leg doesn't make it a leg." Similarly, the legislature's designation of SAAP, a state agency that performs no judicial functions whatsoever, as "a judicial agency of state government" does not somehow make it so.

¶ 41 We must presume that the legislature is aware of agencies of state government–like SAAP–that it has created and would further be aware that SAAP performs no judicial functions. Yet, despite this awareness, the legislature enacted Public Act 96-900, designating SAAP, an exclusively executive and prosecutorial agency of state government, as a judicial agency of state government. The General Assembly must have had some reason for passing legislation that is the statutory equivalent of declaring a dog's tail to be a leg, and the only reason we can see is to provide SAAP with a FOIA exemption.

¶ 42 J. The Term "Judicial Bodies" as Used in *Nelson*

¶ 43 This case does not involve a FOIA request made to SAAP. Nonetheless, we have extensively discussed Public Act 96-900 that amended the SAAP Act because, in our view,

it supports the Second District's holding in *Nelson* that (1) FOIA does not apply to "judicial bodies" and (2) the term "judicial bodies" is broader than the term "the judiciary." After all, as we have concluded, the legislature in Public Act 96-900 (1) deemed SAAP to be "a judicial agency of state government" (although it clearly is not) and (2) did so to exempt SAAP, clearly a prosecutorial agency, from FOIA requests. Thus, at least in the context of determining whether a judicial exemption under FOIA exists, (1) the Second District's interpretation in *Nelson* of "judicial bodies" as being broader than it normally would be is correct and (2) the legislature intended for the judicial exemption under FOIA to be broadly construed and to include the State's Attorneys of Illinois. In our opinion, this conclusion regarding the legislature's intent is compelled by the enactment of Public Act 96-900.

¶ 44                          K. Epilogue Regarding Statutory Interpretation

¶ 45    The role of this court when construing statutes is not to ask whether the legislature could have stated the matter more directly and less ambiguously because such perceived legislative deficiencies do not matter. The judiciary's purpose when construing statutes is to determine as best it can what the statutes mean based upon what the legislature has written.

¶ 46    One might think that the legislature could have been more direct and less ambiguous in this very case. For instance, if the legislature really intended to exempt State's Attorneys offices from FOIA, it could have simply and explicitly so stated. The definition of "public body" in section 2(a) of FOIA (5 ILCS 140/2(a) (West 2012)) could have been amended to state that it did not include State's Attorney's offices. Multiple opportunities to make such an amendment have repeatedly arisen. We note that over the last 19 years, section 2 of FOIA has been amended 13 times, with 4 of those amendments occuring since 2010. See Pub. Act 88-614, § 92 (eff. Sept. 7, 1994); Pub. Act 89-681, § 5 (eff. Dec. 13, 1996); Pub. Act 90-144, § 7 (eff. July 23, 1997); Pub. Act 90-670, § 5 (eff. July 31, 1998); Pub. Act 91-935, § 30 (eff. June 1, 2001); Pub. Act 92-335, § 5 (eff. Aug. 10, 2001); Pub. Act 92-468, § 10 (eff. Aug. 22, 2001); Pub. Act 92-547, § 3 (eff. June 13, 2002); Pub. Act 92-651, § 7 (eff. July 11, 2002); Pub. Act 96-261, § 900 (eff. Jan. 1, 2010); Pub. Act 96-542, § 10 (eff. Jan. 1, 2010); Pub. Act 96-1000, § 10 (eff. July 2, 2010); Pub. Act 97-579, § 3 (eff. Aug. 26, 2011).

¶ 47    On the other hand, we note that FOIA contains no explicit exemption for the judiciary in the first place. As we observed earlier, the appellate court in *Copley Press* simply inferred such an exemption because FOIA, in defining "public body" in section 2(a), refers to all "legislative, executive, administrative, or advisory bodies of the [s]tate." (Internal quotation marks omitted.) *Copley Press*, 271 Ill. App. 3d at 553, 648 N.E.2d at 327-28. The exemption of the judiciary under FOIA was thus inferred based upon the absence of the judiciary from the above list. We mention this because, in context, our conclusion that the legislature took a rather oblique path to including a State's Attorney's office under the judicial exemption of FOIA is consistent with the oblique path the legislature has earlier and consistently taken with regard to the judicial exemption. By consistently, we mean that the legislature has had repeated opportunities to make explicit the judicial exemption from FOIA, but it has never taken advantage of those opportunities to do so.

¶ 48                                      III. CONCLUSION

¶ 49        For the reasons stated, we reverse the trial court's judgment.


¶ 50        Reversed.


¶ 51        JUSTICE TURNER, specially concurring.

¶ 52        While I agree with Justice Steigmann's ultimate resolution of this case, I write separately to note I agree with the Second District's analysis and holding in *Nelson* and would have followed that analysis here. Specifically, I agree with the *Nelson* court that it is significant the office of State's Attorney was established in the judicial article of the Illinois Constitution. Ill. Const. 1970, art. VI, § 19.


¶ 53        PRESIDING JUSTICE APPLETON, dissenting.

¶ 54        I respectfully dissent. While I recognize the very real policy reasons in preventing the disclosure of prosecution files and work product (a policy with which I agree), I do not find the slender reed of the legislature's denomination of the State's Attorneys Appellate Prosecutor's Office as a "judicial agency of State government," without any substantive policy analysis of this conclusion by the General Assembly, is sufficient to support the conclusion this state's 102 State's Attorneys are exempt from FOIA. Nor do I believe the inclusion of State's Attorneys within the several iterations of the judicial article of our state constitution places those offices within the judicial branch of government. Indeed, it is the judicial branch of government that is specifically excluded as a "public body" within the meaning of FOIA. Those 102 offices function as the prosecutorial arm of our system of justice, independent of judicial control. Because State's Attorneys are not members of the judicial branch and, thus, excluded, it stands to reason the offices *are* "public bodies" according to our legislature's definition of that term.

¶ 55        Should the legislature come to the conclusion that State's Attorneys' files not be subject to FOIA, it can specifically exclude State's Attorneys' offices from its purview.