# Illinois Official Reports

## Appellate Court

*Hughes v. Godinez*, 2014 IL App (4th) 130056

| | |
|---|---|
| Appellate Court Caption | MAURICE HUGHES, Plaintiff-Appellant, v. S.A. GODINEZ, Director; GLEN AUSTIN, Warden; and RITA ROSSI, Records Officer, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-13-0056 |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed | December 11, 2013<br><br>February 14, 2014<br>February 14, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Summary judgment was properly entered for defendants in proceedings on a prison inmate's *pro se* petition for a writ of *mandamus* alleging that defendants incorrectly calculated his projected release date on his concurrent sentences for second degree murder and aggravated arson, since basing the calculation of defendant's release date on his second degree murder conviction, rather than the aggravated arson conviction, as he requested, would result in a release date nearly 20 months prior to the statutory minimum sentence he was required to serve for aggravated arson. |
| Decision Under Review | Appeal from the Circuit Court of Morgan County, No. 12-MR-63; the Hon. Richard T. Mitchell, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Maurice Hughes, of Jacksonville, appellant *pro se*.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Ann C. Maskaleris, Assistant Attorney General, of counsel), for appellees.

Panel

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Pope and Turner concurred in the judgment and opinion.

## OPINION

¶ 1    In May 2012, plaintiff, Maurice Hughes, an inmate at Jacksonville Correctional Center, *pro se* filed a petition for writ of *mandamus* under article 14 of the Code of Civil Procedure (Civil Code) (735 ILCS 5/14-101 to 14-109 (West 2012)), alleging that defendants, S.A. Godinez (Director, Illinois Department of Corrections (DOC)), Glen Austin (former warden, Jacksonville Correctional Center), and Rita Rossi (records officer), acted unlawfully by incorrectly calculating his projected release date from prison.

¶ 2    In July 2012, defendants filed a motion for summary judgment pursuant to section 2-1005 of the Civil Code (735 ILCS 5/2-1005 (West 2012)), arguing that no genuine issue of material fact existed because DOC had properly calculated plaintiff's projected release date based on the appropriate concurrent sentence imposed by the trial court.

¶ 3    Following a September 2012 hearing, the trial court granted defendants' summary-judgment motion. Plaintiff *pro se* appeals, arguing that the court erred by granting summary judgment in defendants' favor. We disagree and affirm.

## I. BACKGROUND

¶ 5    The following information was gleaned from the parties' pleadings and other supporting documents filed in the trial court.

¶ 6    On February 7, 2007, the trial court sentenced plaintiff to the following concurrent prison terms: (1) 17 years for second degree murder (720 ILCS 5/9-2 (West 2006)); (2) 12 years for aggravated arson (720 ILCS 5/20-1.1 (West 2006)); (3) 12 years for residential arson (720 ILCS 5/20-1.2(a) (West 2006)); and (4) 5 years for concealment of homicidal death (720 ILCS 5/9-3.1 (West 2006)). The court also granted plaintiff 864 days of pretrial confinement credit against his concurrent sentences. (Because the parties' arguments concern only plaintiff's concurrent sentences for second degree murder and aggravated arson, we limit our discussion accordingly.)

- 2 -

¶ 7    Section 3-6-3(a)(2.5) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/3-6-3(a)(2.5) (West 2006)) required plaintiff to serve at least 85% of his 12-year sentence for aggravated arson. Specifically, section 3-6-3(a)(2.5) provides that "a prisoner who is serving a sentence for aggravated arson *** shall receive no more than 4.5 days of good[-]conduct credit for each month of his *** sentence." 730 ILCS 5/3-6-3(a)(2.5) (West 2006). Based on that provision, DOC calculated that plaintiff would serve–at a minimum–10 years, 2 months, and 12 days of his 12-year sentence for aggravated arson, provided that he earned the maximum good-conduct credit he was entitled to receive.

¶ 8    With regard to plaintiff's conviction for second degree murder, plaintiff was eligible for day-for-day good-time credit under section 3-6-3(a)(2.1) of the Unified Code (730 ILCS 5/3-6-3(a)(2.1) (West 2006)). If plaintiff earned the maximum day-for-day good-conduct credit he was entitled to receive, he would serve 8½ years for second degree murder.

¶ 9    In August 2009, DOC calculated plaintiff's projected release date by first noting his February 7, 2007, custody date and then crediting him 864 days of pretrial confinement credit as the trial court ordered. That calculation resulted in a revised custody date of September 13, 2004. Using the revised custody date, DOC then made the following two separate calculations: (1) using plaintiff's aggravated arson sentence, DOC added 10 years, 2 months, and 12 days to calculate a projected release date of November 25, 2014, and (2) using plaintiff's second degree murder sentence, DOC added 8½ years to calculate a projected release date of March 13, 2013. DOC then determined that because plaintiff's aggravated arson conviction resulted in the longest sentence and the latest projected release date, that calculation controlled.

¶ 10    In May 2012, plaintiff *pro se* filed a petition for writ of *mandamus*, alleging that defendants acted unlawfully by incorrectly calculating his projected release date. Specifically, plaintiff contended that DOC improperly used the aggravated arson sentence to determine his projected release date instead of using "the most serious offense" of second degree murder.

¶ 11    In July 2012, defendants filed a motion for summary judgment, arguing that no genuine issue of material fact existed because DOC had properly calculated plaintiff's projected release date based on his aggravated arson sentence. Following a September 2012 hearing, the trial court granted defendants' summary-judgment motion.

¶ 12    This appeal followed.

¶ 13              II. THE TRIAL COURT'S GRANT OF SUMMARY JUDGMENT

¶ 14    Plaintiff argues that the trial court erred by granting summary judgment in defendants' favor. We disagree.

¶ 15              A. Summary Judgment and the Standard of Review

¶ 16    "Summary judgment is appropriate where the pleadings, affidavits, depositions, and admissions on file, when viewed in the light most favorable to the nonmoving party, demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *West Bend Mutual Insurance v. Norton*, 406 Ill. App. 3d 741, 744, 940 N.E.2d 1176, 1179 (2010). We review *de novo* a trial court's order granting summary judgment. *Id*.

¶ 17                               B. The Remedy of *Mandamus*

¶ 18        The Illinois Supreme Court recently explained the remedy of *mandamus* in *McFatridge v. Madigan*, 2013 IL 113676, ¶ 17, 989 N.E.2d 165, as follows:

> " '*Mandamus* is an extraordinary remedy used to compel a public officer to perform nondiscretionary official duties.' [Citation.] In order to obtain a *mandamus* remedy, the plaintiff must establish a clear right to the requested relief, a clear duty of the public officer to act, and clear authority of the public officer to comply with the order. [Citation.] A writ of *mandamus* is appropriate when used to compel compliance with mandatory legal standards but not when the act in question involves the exercise of a public officer's discretion."

¶ 19                               C. Plaintiff's Claim

¶ 20        In support of his claim that the trial court erred by granting summary judgment in defendants' favor, plaintiff relies on section 5-8-7(b) of the Unified Code, entitled, "Calculation of Term of Imprisonment," which provides, as follows:

> "The offender shall be given credit on the determinate sentence or maximum term and the minimum period of imprisonment for time spent in custody as a result of the offense for which the sentence was imposed ***." 730 ILCS 5/5-8-7(b) (West 2008).

(The parties do not dispute that section 5-8-7(b) applied to plaintiff's case despite its subsequent repeal. See Pub. Act 95-1052 (eff. July 1, 2009) (repealing 730 ILCS 5/5-8-7).)

¶ 21        In *People v. Revell*, 372 Ill. App. 3d 981, 991, 868 N.E.2d 318, 327 (2007), this court noted that the purpose of section 5-8-7(b) of the Unified Code was to "ensure that defendants do not ultimately remain incarcerated for periods in excess of their eventual sentences." (Internal quotation marks omitted.) To achieve that goal, section 5-8-7(b) " 'explicitly required that offenders receive credit against their terms of imprisonment when they are "in custody as a result of the offense for which the sentence was imposed." ' " *In re B.L.S.*, 202 Ill. 2d 510, 518, 782 N.E.2d 217, 222 (2002) (quoting *People v. Robinson*, 172 Ill. 2d 452, 462, 667 N.E.2d 1305, 1310 (1996)).

¶ 22        Plaintiff does not dispute DOC's calculation concerning the 864 days' pretrial confinement credit, which resulted in a revised custody date of September 13, 2004. Instead, plaintiff focuses on the phrase "maximum term" and contends that because the 17-year sentence for second degree murder was more than the 12-year concurrent term for aggravated arson, the 17-year sentence represented the "maximum term" for calculating his projected release date under section 5-8-7(b) of the Unified Code. See *People v. Waldron*, 375 Ill. App. 3d 159, 161, 872 N.E.2d 1036, 1038 (2007) ("concurrent sentences are sentences which operate simultaneously" (internal quotation marks omitted)). Plaintiff then asserts that DOC unlawfully calculated his projected release date by using his 12-year aggravated arson sentence as the basis for its projected release date calculation. We reject plaintiff's argument that defendants had a "clear duty" to act in the manner he contends.

¶ 23        Our review of the record in this case reveals that DOC complied with the statutory provisions of section 5-8-7(b) of the Unified Code. Specifically, DOC calculated plaintiff's projected release dates under both his second degree murder and aggravated arson convictions, and after applying the appropriate good-conduct credit to those concurrent sentences, then

- 4 -

determined that plaintiff's conviction for aggravated arson represented the "determinate sentence or maximum term." See *Johnson v. Department of Corrections*, 368 Ill. App. 3d 147, 151, 857 N.E.2d 282, 286 (2006) (because the Unified Code does not indicate how or when good-conduct credits should be awarded but only how much credit is to be awarded, it does not prevent DOC from aggregating the credits and awarding the full amount in advance subject to reductions based on infractions). The record does not show that DOC reduced plaintiff's good-time credit.

¶ 24 If we were to agree with plaintiff that his second degree murder conviction controls, his resulting March 13, 2013, projected release date would violate section 3-6-3(a)(2.5) of the Unified Code in that it would result in his release approximately 20 months prior to the statutory *minimum* sentence he was required to serve for aggravated arson, which DOC calculated was November 25, 2014.

¶ 25 Accordingly, because under the facts presented in this case plaintiff has no clear right to the remedy he requested under his writ of *mandamus*, we reject his claim that the trial court erred by granting summary judgment in favor of defendants.

¶ 26                                    III. CONCLUSION
¶ 27 For the reasons stated, we affirm the trial court's judgment.

¶ 28 Affirmed.