# Illinois Official Reports

## Appellate Court

---

### *Evans v. Godinez*, 2014 IL App (4th) 130686

---

| | |
|---|---|
| Appellate Court Caption | WILLIAM EVANS, Plaintiff-Appellant, v. S.A. GODINEZ, KEITH ANGLIN, and LAMAR COLEMAN, Defendants-Appellees. |
| | |
| District & No. | Fourth District<br>Docket No. 4-13-0686 |
| | |
| Rule 23 Order filed | June 18, 2014 |
| Rule 23 Order withdrawn | December 1, 2014 |
| Opinion filed | December 1, 2014 |
| | |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Summary judgment was properly entered for defendant Department of Corrections officials and employees in plaintiff inmate's action alleging that the denial of his request for prison space and time to conduct Nation of Islam study groups and prayer sessions violated his rights under the first and fourteenth amendments, since defendants' decision to adhere to the requirements of the Administrative Code with respect to the maintenance of safety and security at the correctional facility was reasonably related to a legitimate penological interest and would be deemed valid, despite the fact that an inmate's constitutional rights might be affected. |
| | |
| Decision Under Review | Appeal from the Circuit Court of Vermilion County, No. 12-MR-41; the Hon. Derek J. Girton, Judge, presiding. |
| | |
| Judgment | Affirmed. |

Counsel on
Appeal

William Evans, of Chicago Heights, appellant *pro se.*

Lisa Madigan, Attorney General, of Chicago (Carolyn E. Shapiro, Solicitor General, and Mary C. LaBrec, Assistant Attorney General, of counsel), for appellees.

Panel

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Turner and Holder White concurred in the judgment and opinion.

**OPINION**

¶ 1    In December 2012, plaintiff, William Evans, then an inmate at the Danville Correctional Center, *pro se* filed a second amended complaint under section 1983 of the Civil Rights Act of 1871 (Civil Rights Act) (42 U.S.C. § 1983 (1996)) and the Religious Land Use and Institutionalized Persons Act of 2000 (Religious Land Use Act) (42 U.S.C. §§ 2000cc to 2000cc-5 (2000)) against defendants, S.A. Godinez (Director of the Department of Corrections) (DOC) Keith Anglin (former Danville Correctional Center warden), and Lamar Coleman (Danville Correctional Center chaplain). The underlying issue concerned Evans' request for prison space and time to conduct separate Nation of Islam study groups and prayer sessions on a weekly basis. Evans' suit alleged that by denying his request, defendants, acting under the color of state law, violated his (1) first-amendment rights to the free exercise of religion and to peaceably assemble and (2) fourteenth-amendment rights to equal protection and due process. Evans sought injunctive relief as well as monetary and punitive damages.

¶ 2    In March 2013, defendants filed a second motion for summary judgment under section 2-1005 of the Code of Civil Procedure (Civil Procedure Code) (735 ILCS 5/2-1005 (West 2012)), arguing that (1) an inmate's constitutional rights may be limited due to legitimate prison interests and (2) the doctrines of sovereign and qualified immunity shielded them from liability. Following an April 2013 hearing, the trial court later entered an order granting summary judgment in defendants' favor.

¶ 3    Evans appeals, arguing that the trial court erred by granting summary judgment in defendants' favor. We disagree and affirm.

¶ 4                                    I. BACKGROUND
¶ 5                            A. The Genesis of Evans' Appeal
¶ 6    In August 2011, Evans submitted a grievance addressed to Anglin, proclaiming his Muslim faith and requesting, in part, that (1) his diet be changed to "lacto-ovo

- 2 -

vegetarianism" and (2) Nation of Islam members be allowed to hold study groups twice a week as other religious groups were permitted to conduct such meetings. (A lacto-ovo vegetarian does not eat meat, but can consume dairy and egg products.) Evans objected to the practice of allowing Nation of Islam members to attend Al-Islam Muslim study groups because each faith had different fundamental beliefs. When Evans attempted to state his beliefs during the Al-Islam study group, "open disputes" erupted in which he was ridiculed and verbally assaulted. That same month, Anglin forwarded Evans' complaint to a prison counselor.

¶ 7    In September 2011, D. Laker, the counselor and grievance officer assigned to address Evans' grievance, spoke with Coleman, who told him that in the past, Nation of Islam members were allowed to congregate once a week without a suitable faith or religious leader as required by section 425.60 of Title 20 of the Administrative Code (20 Ill. Adm. Code 425.60 (1995)). In his written report, Laker noted as follows:

"In section [425.60(a) of Title 20 of the Administrative Code (20 Ill. Adm. Code 425.60(a) (1995)], the basic tenants are that 'Religious Activities approved by the [Chief Administrative Officer] shall be conducted or supervised by a chaplain or religious program volunteer.' [A]s this directive wasn't being completely adhered to at that time and in light of trying not to favor any particular religion over another, this directive will be followed more strictly in the future for all religious denominations."

¶ 8    Because Evans (1) did not have "an Ima[m] or suitable religious volunteer" to conduct services for the Nation of Islam members and (2) failed to comply with section 425.60(f) of Title 20 of the Administrative Code (20 Ill. Adm. Code 425.60(f) (1995))–which outlines a six-step process to permit faith-based groups to congregate absent a suitable religious representative–Laker recommended that Anglin deny Evans' grievance as to that issue. As to Evans' dietary demand, Laker acknowledged that Evans had been placed on a vegan diet, which was a suitable alternative under section 425.70 of Title 20 of the Administrative Code (20 Ill. Adm. Code 425.70 (1995)). (A vegan does not eat meat, eggs, dairy products, or any animal-derived substances.) That same month, Anglin concurred with Laker's recommendation.

¶ 9    Shortly thereafter, Evans appealed to Godinez, claiming that Coleman was refusing to do his job and supervise Nation of Islam study groups and prayer services. In December 2011, the Administrative Review Board (ARB) found that (1) Evans' dietary requests had been adequately changed and (2) any religious-group services must comply with section 425.60 of Title 20 of the Administrative Code. Godinez later concurred with the ARB's determination.

¶ 10    In January 2012, Evans filed a second grievance, alleging "religious discrimination" through the "denial of religious services." Evans claimed that he had written to the national headquarters of the Nation of Islam requesting a religious representative for their study group, but six months had passed without a response. Citing section 425.60 of Title 20 of the Administrative Code, Evans requested that he and another inmate, Tyrone Harvey, be allowed to conduct Nation of Islam study groups and prayer services. Shortly thereafter, the assigned counselor noted that earlier that same month, Godinez had addressed the issues Evans raised in his second grievance.

¶ 11    In February 2012, Evans and Harvey *pro se* filed a complaint under section 1983 of the Civil Rights Act, alleging defendants, acting under the color of state law, violated their (1) first-amendment rights to the free exercise of religion and freedom to assemble and (2)

fourteenth-amendment right to due process when defendants refused to allow Nation of Islam members to hold separate group-study and prayer sessions to practice their religion. (Because Harvey is not a party to this appeal, we omit any further reference to his participation in the subsequent filings that prompted Evans' appeal.)

¶ 12    In July 2012, Evans *pro se* filed an emergency motion requesting sanctions for retaliation. In his motion, Evans alleged that defendants had retaliated against him by strictly adhering to the guidance contained in section 425.60 of Title 20 of the Administrative Code, which ended the study-group sessions of at least 50 Al-Islamic prisoners, among others. Evans asserted that defendants acted deliberately to "pit us against one another[ ]" or intimidate him into withdrawing his complaint. That same month, Evans *pro se* filed a motion for summary judgment under section 2-1005 of the Civil Procedure Code (735 ILCS 5/2-1005 (West 2012)).

¶ 13    In September 2012, defendants filed their own motion for summary judgment. Later that same month, Evans *pro se* filed a motion for leave to amend his February 2012 complaint to add claims under the Religious Land Use Act and the Religious Freedom Restoration Act (775 ILCS 35/1 to 99 (West 2012)). Shortly thereafter, Evans filed a third grievance, claiming a "failure to provide religious diet change." Specifically, Evans claimed that his vegan diet was (1) too restrictive because Nation of Islam members can consume dairy and egg products and (2) not restrictive enough in that the vegan diet allowed for the consumption of certain vegetables which Nation of Islam members cannot consume. Evans requested immediate accommodation of his dietary requirements and permission to cook his own meals.

¶ 14    The assigned counselor responded to Evans' third grievance by attaching an August 2012 memorandum entitled "Religious Diet Termination Notice" from Chaplain Chris Easton. Easton informed Evans that his purchase of "ramen noodles" in July and August 2012 violated his religious-diet agreement. Easton cautioned that another violation would result in termination of his dietary accommodation under section 425.70 of Title 20 of the Administrative Code. Laker reviewed Evans' grievance and recommended that it be denied, noting that Evans did not complain about his vegan diet until he received Easton's notice. Laker also noted that because Evans was assigned as a prison cook, he had "some" control of his diet. In October 2012, Anglin concurred with Laker's recommendations. Evans then appealed the denial of his grievance to Godinez, who concurred with the ARB's recommendation to deny Evans' dietary grievance because it had been appropriately addressed.

¶ 15                            B. The Issue Prompting Evans' Appeal to This Court

¶ 16    In December 2012, Evans *pro se* filed a second amended complaint under section 1983 of the Civil Rights Act and the Religious Land Use Act against each defendant "in their individual capacity as prison officials." Specifically, Evans alleged that defendants, acting under color of state law, violated his (1) first-amendment rights to the free exercise of religion and to peaceably assemble and (2) fourteenth-amendment rights to equal protection and due process. In his prayer for relief, Evans sought injunctive relief for himself and all similarly situated prisoners of the Nation of Islam. Evans also sought $500,000 in compensatory damages and $1 million in punitive damages from each defendant.

- 4 -

¶ 17    In March 2013, defendants filed a second motion for summary judgment, asserting that (1) an inmate's first-amendment rights may be limited due to legitimate prison interests, such as prison safety and security and (2) the doctrine of qualified immunity shielded defendants from liability. Appended to this motion was Anglin's August 2012 affidavit, in which he explained that the recent shift to strictly adhere to the plain language of section 425.60 of Title 20 of the Administrative Code was, in part, to avoid the appearance of favoring one religious group over another. Anglin added the following rationale:

> "Having inmate-led religious services, such as those requested by certain Nation of Islam inmates, pose[s] a threat to the order and security of the institution. This is due to the fact that a number of inmates would then be gathered in a single place without proper supervision. Having an inmate take a position of authority over other inmates also implicates security concerns, as they may then have undue influence over other individuals."

¶ 18    In April 2013, the trial court conducted a telephonic hearing on defendants' second motion for summary judgment. Defendants argued, in pertinent part, that despite Evans' numerous constitutional claims in his December 2012 second amended complaint, he failed to provide any evidentiary support to refute Anglin's concerns regarding prison safety and security.

¶ 19    Evans argued that a correctional officer's presence or video monitoring were the least restrictive means to address prison-security concerns. Evans continued that requiring suitable religious representatives would not address security concerns but, instead, exacerbate them because the representative would be unfamiliar with prison rules. Evans also argued that other DOC prisons, such as Pinckneyville Correctional Center, which has a higher security posture than Danville Correctional Center, permitted inmate-led religious services. Evans stated that (1) he was not seeking a special title or increased authority for inmates who lead religious groups and (2) permitting inmates to be religious leaders was similar to inmates who are paralegals or law clerks, which confers authority over other inmates. Evans also alleged discrimination in that defendants had implemented special diets for Jewish inmates but relegated Nation of Islam members to vegan diets.

¶ 20    In rebuttal, defendants noted that as to Evans' least-restrictive-means claim, section 425.60(f) of Title 20 of the Administrative Code provided a six-step process to obtain the relief Evans sought, but he had yet to avail himself of that process.

¶ 21    Following argument, the trial court entered a July 2013 order granting defendants' motion for summary judgment. In so doing, the court found that defendants had "demonstrated a legitimate penological concern, specifically, the safety and security of the institution, [by] denying separate, inmate-led Nation of Islam services."

¶ 22    This appeal followed.

¶ 23    ## II. THE TRIAL COURT'S GRANT OF SUMMARY JUDGMENT
IN DEFENDANT'S FAVOR

¶ 24    ### A. Summary Judgment and the Standard of Review

¶ 25    " 'Summary judgment is appropriate where the pleadings, affidavits, depositions, and admissions on file, when viewed in the light most favorable to the nonmoving party, demonstrate that there is no genuine issue of material fact and that the moving party is

entitled to judgment as a matter of law.' " *Hughes v. Godinez*, 2014 IL App (4th) 130056, ¶ 16, 11 N.E.3d 842 (quoting *West Bend Mutual Insurance v. Norton*, 406 Ill. App. 3d 741, 744, 940 N.E.2d 1176, 1179 (2010)). "We review *de novo* the trial court's grant of summary judgment." *Uphoff v. Grosskopf*, 2013 IL App (4th) 130422, ¶ 11, 2 N.E.3d 498.

¶ 26                    B. Religious Activities as Governed by the Administrative Code

¶ 27        Section 425.60 of Title 20 of the Administrative Code, entitled, "Religious Activities," provides, as follows:

"a) Religious activities approved by the Chief Administrative Officer shall be conducted or supervised by a chaplain or religious program volunteer.

b) The Chief Administrative Officer, after consultation with the facility chaplain, shall regulate the time, place, and manner in which religious activities are conducted. The Chief Administrative Officer may limit, restrict, discontinue, or deny a religious activity based upon concerns regarding security, safety, rehabilitation, institutional order, space, or resources.

\*\*\*

d) Nothing in this Part shall require the Department to provide each separate religious group or sects within a group with a chaplain or with separate religious activities regardless of the size of the religious group or the extent of the demand for the activities.

e) Committed persons shall be prohibited from assuming a position of authority or leadership over other committed persons. This does not preclude committed persons from actively participating in religious activities.

f) Religious activities for which religious program volunteers or chaplains of that particular faith are unavailable on a permanent or protracted basis may be permitted if the following conditions are satisfied:

1) The committed persons submit written verification to the facility chaplain that they attempted to locate and secure the services of religious leaders or faith representatives from the community and that such persons refused or were not approved to conduct religious activities;

2) Security, program, or chaplaincy staff are available to attend and supervise the religious activity;

3) Written verification that attendance at existing religious activities does not satisfy the recognized tenets of their faith is received;

4) Written agreement by a chaplain, faith representative, or recognized religious leader of that faith group to provide general oversight and guidance of the religious activity is received;

5) The Religious Practice Advisory Board recommends approval; and

6) The committed person submits a copy of any proposed sermon or doctrinal interpretation to the Chief Administrative Officer or staff designated to supervise the religious activity for review and approval prior to delivery, based on safety and security concerns.

g) The staff supervisor may call upon various committed persons to guide portions of the religious activity subject to safety and security concerns.

h) Religious activities defined under subsection (f) of this Section shall be prohibited where based solely on the temporary or occasional unavailability of a chaplain or a religious program volunteer.

i) The Chief Administrative Officer may limit, restrict, or discontinue religious activities permitted under subsection (f) of this Section based upon concerns such as security, safety, rehabilitation, institutional order, space, or resources and may require periodic rotation of committed persons permitted to guide portions of religious activities." 20 Ill. Adm. Code 425.60 (1995).

¶ 28                                    C. Evans' Claims of Error

¶ 29    Evans argues that the trial court erred by granting summary judgment in defendants' favor. We disagree.

¶ 30                          1. *Evans' Request for Injunctive Relief*

¶ 31    As we have previously noted, in December 2012, Evans *pro se* filed a second amended complaint under section 1983 of the Civil Rights Act and the Religious Land Use Act against each defendant in his or her individual capacity as a prison official, seeking injunctive relief for himself and all similarly situated prisoners of the Nation of Islam. Specifically, Evans sought "a preliminary injunction and restraining order stopping any retaliation and compelling defendants and their successors, if any, [to] provide [a] time and place *** to conduct [Nation of Islam] study groups and prayer sessions."

¶ 32    However, defendants claim and the DOC website confirms that on March 17, 2014, DOC released Evans from Danville Correctional Center. See *Rodriguez v. Illinois Prisoner Review Board*, 376 Ill. App. 3d 429, 430, 876 N.E.2d 659, 660 (2007) (the appellate court can take judicial notice of information posted to DOC's website). Because we agree with defendants that addressing Evans' injunctive claim would not afford him any relief because he is no longer subjected to DOC's policies or defendants' control, we dismiss Evans' injunctive-relief claim as moot. See *People ex rel. Department of Corrections v. Millard*, 335 Ill. App. 3d 1066, 1069, 782 N.E.2d 966, 968 (2003) ("When events have occurred that make it impossible for the reviewing court to render effectual relief, a case is rendered moot."). Evans' request for injunctive relief for similarly situated Nation of Islam members does not require that we address his claim because he failed to request that the trial court certify his complaint as a class action as required by section 2-801 of the Civil Procedure Code (735 ILCS 5/2-801 (West 2012)). See *Smith v. Illinois Central R.R. Co.*, 223 Ill. 2d 441, 447, 860 N.E.2d 332, 336 (2006) (a complaint may proceed as a class action only if the trial court finds that the four elements listed under section 2-801 of the Civil Procedure Code exist).

¶ 33    We also note that the United States Congress enacted the Religious Land Use Act pursuant to the spending clause of the Constitution of the United States (U.S. Const., art. I, § 8), which does not permit suits against prison officials in their individual capacity. *Maddox v. Love*, 655 F.3d 709, 717 (7th Cir. 2011); see also *Nelson v. Miller*, 570 F.3d 868, 889 (7th Cir. 2009) ("Construing [the Religious Land Use Act] to provide for damages actions against officials in their individual capacities would raise serious questions regarding whether

Congress had exceeded its authority under the Spending Clause. *** [W]e decline to read [the Religious Land Use Act] as allowing damages against defendants in their individual capacities."). Accordingly, we reject the claims Evans raises against defendants under the Religious Land Use Act.

¶ 34                        2. *Evans' Religious-Activities Claim*

¶ 35    In support of his argument that the trial court erred by granting summary judgment in defendants' favor, Evans contends–as he did to the court during the April 2013 hearing on defendant's second motion for summary judgment–that defendants denied him the opportunity to exercise his religious freedom under the first amendment by refusing to allow weekly, inmate-led, Nation of Islam group-study and prayer sessions. We reject Evans' characterization of defendants' actions concerning his religious freedoms.

¶ 36    In *Dupree v. Hardy*, 2011 IL App (4th) 100351, ¶ 26, 960 N.E.2d 1, this court outlined the narrow constitutional rights afforded to inmates, which concern basic human needs, reasonable access to the courts, and "a reasonable opportunity to exercise religious freedom under the first amendment." (Internal quotation marks omitted.) We earlier quoted the majority of section 425.60 of Title 20 of the Administrative Code to illustrate the mandates placed upon a chief administrative officer of a correctional facility to "regulate the time, place, and manner in which religious activities are conducted" and the discretion afforded that official to "limit, restrict, discontinue, or deny a religious activity based upon concerns regarding security, safety, rehabilitation, institutional order, space, or resources." 20 Ill. Adm. Code 425.60(b) (1995).

¶ 37    Although we earlier noted our *de novo* standard of review, we also acknowledge the overarching deference afforded to prison administrators tasked with the day-to-day operations of their respective correctional facilities:

> "[B]ecause the problems that arise in the daily operation of a corrections facility are not susceptible to easy solutions, prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." (Internal quotation marks omitted.) *People v. Savage*, 361 Ill. App. 3d 750, 757, 838 N.E.2d 247, 253-54 (2005).

¶ 38    In this case, the record reveals that defendants elected to implement the clear provisions of section 425.60 of Title 20 of the Administrative Code in a nondiscriminatory fashion to all religious activities at the Danville Correctional Center regardless of denomination. In so doing, defendants did not refuse or prohibit Evans from exercising his religious freedoms as he contends. Instead, defendants required the supervision of religious activities by an appropriate religious representative, citing, in pertinent part, the legitimate penological concerns pertaining to prison security, which defendants undoubtedly recognized as a result of the religious tension Evans experienced during the unsupervised, inmate-led Al-Islam prayer sessions.

¶ 39    Evans responds that a prison chaplain could have supervised the study groups and prayer sessions to eliminate defendants' security concerns. His proposed solution, however, ignores the scarce resources available to prison administrators and the numerous other religious denominations that would likely seek the same religious accommodation, which would exacerbate defendants' concerns. In addition, section 425.60(f) of Title 20 of the

Administrative Code allowed for a waiver of the religious-representative requirement if certain requirements were satisfied, but Evans did not pursue that option. Essentially, Evans' claim to this court is that defendants did not permit him to practice his religion as he desired. We conclude, however, that defendants' decision to strictly adhere to the provisions contained in section 425.60 of Title 20 of the Administrative Code was reasonably related to a legitimate penological interest–namely, to maintain safety and security at the Danville Correctional Center. See *People ex rel. Department of Corrections v. Fort*, 352 Ill. App. 3d 309, 314, 815 N.E.2d 1246, 1250 (2004) ("A prison regulation, even one that impinges on an inmate's constitutional right, is valid if it is reasonably related to a legitimate penological interest."). Accordingly, we reject Evans' claim of error to the contrary.

¶ 40 In so concluding, we note that Evans also claims–without any citation to controlling authority–that defendants denied him the opportunity to exercise his religious freedom under the first amendment by refusing to provide him "religiously suitable foods" for his diet. We note, however, that despite his *pro se* status, Evans is still required to comply with Illinois Supreme Court Rule 341(h)(7) (eff. Feb. 6, 2013), which mandates the argument section of a brief "contain the contentions of the appellant and the reasons therefor, with citation of the authorities" relied upon. See *People v. Hood*, 210 Ill. App. 3d 743, 746, 569 N.E.2d 228, 230 (1991) ("A reviewing court is entitled to have the issues clearly defined with pertinent authority cited and is not simply a depository into which the appealing party may dump the burden of argument and research."). "Bare contentions in the absence of argument or citation of authority do not merit consideration on appeal and are deemed waived." (Internal quotation marks omitted.) *Country Mutual Insurance Co. v. Styck's Body Shop, Inc.*, 396 Ill. App. 3d 241, 254, 918 N.E.2d 1195, 1207 (2009). Accordingly, we need not consider Evans' dietary claim.

¶ 41                                                   III. CONCLUSION

¶ 42 For the reasons stated, we affirm the trial court's judgment.

¶ 43 Affirmed.